Glenn KENNEDY, Plaintiff,

v.

GN DANAVOX, a Minnesota corporation, and Martie Ormsby, an individual, Defendants.

Civil No. 4–95–180.

United States District Court, D. Minnesota, Fourth Division.

April 29, 1996.

Donald H. Nichols and Nichols, Kaster & Anderson, Minneapolis, MN, for plaintiff.

Linda L. Holstein, Karen E. Reilly and Schatz, Paquin, Lockridge, Grindal & Holstein, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendants' motion.

## BACKGROUND

Plaintiff Glenn Kennedy ("Kennedy") was employed by defendant GN Danavox ("Danavox") from September 21, 1992, until June 7, 1994, as Director of Sales. In this position, Kennedy trained and supervised sales and customer service personnel. According to defendants, problems arose within the first six months of Kennedy's employment. In March 1993, defendant Martie Ormsby ("Ormsby"), president of Danavox, met with sales personnel under Kennedy's direction in an effort to resolve these problems. The most significant criticism directed at Kennedy during the March 1993 meeting was Kennedy's failure to convey information to his staff. Kennedy did not agree that staff members needed the information they sought, but apparently agreed during the meeting to make an effort to keep staff members informed. During the summer and into the fall of 1993, Ormsby did not receive any formal complaints about Kennedy and assumed his performance improved.

In November 1993, however, more information came to light. Andrew Gantman ("Gantman"), a sales representative under Kennedy's supervision, resigned his position with Danavox, and was critical of Kennedy in his exit interview questionnaire. Ormsby reviewed Gantman's comments and decided to speak with other members of the sales and customer service staff. After her investigation, Ormsby concluded that Kennedy's performance had not improved but rather had deteriorated. At this point, according to defendants, Ormsby decided to terminate Kennedy. Before she terminated him, however, Ormsby learned that Kennedy's wife was terminally ill with cancer. Thus, Kennedy's termination was postponed until June 1994, three months after the death of his wife. Two reasons were given for Kennedy's termination, poor leadership and management skills.

The terms of Kennedy's employment contract with Danavox provided for the circumstances of any termination. The contract provides, in part, that:

The Employer may terminate this agreement with 30 days advance notification to Employee.

If the Employee is terminated, he shall receive his base salary for whatever period of time is worked through. It shall further be provided that if Employee resigns or otherwise leaves Employer's employment without giving 30 days advance notice, within 90 days of expiration of this agreement, Employee shall pay damages to Employer as stipulated in an amount equal to 30 days base salary.

The Employer may be terminated by the Employer effective immediately for cause. Cause shall mean fraud, any gross default or misconduct in connection with or affecting the business of the Employer.

Final Employment Contract, pg. 4, attached as Exhibit 4 to the affidavit of Karen Reilly. On June 7, 1994, during the meeting in which Ormsby informed Kennedy that he was terminated, Ormsby did not offer Kennedy 30 days notice or severance, rather she offered Kennedy two choices. First, he could leave

immediately and receive 90 days base salary as severance. Second, he could work at Danavox during the next 90 days on certain projects with the potential that a successful project might lead to a new position with Danavox. Kennedy chose the second option. At the conclusion of the 90 day period, no projects were pursued and Kennedy's position with Danavox ended.

Kennedy does not dispute these sequence of events, but asserts a very different reason for his termination. He believes that he was terminated because he did not return the affections of Ormsby. In support of his belief, Kennedy recounts a remark made in the fall of 1992 by Ormsby to a friend in Kennedy's presence, "If you can't marry them, hire them." Kennedy also cites numerous instances where Ormsby greeted him with a "hug and a kiss on the cheek," handwritten thank-you notes where Ormsby told Kennedy, "having you here is the best thing to happen to me in many years," and "you are such a special person to me," the same thank-you cards signed "Love, Martie," or "Much love, Martie," and Ormsby's jealousy when he was talking to other female associates. Finally, Kennedy claims that during his termination meeting, Ormsby told Kennedy that she was "in love him."

Kennedy also asserts that his termination was based on his age. In support of his claim, Kennedy relies on a typographical error ("Glenn [Kennedy] still copulating") and the corresponding statement repeated at a sales meeting that "You [Kennedy] would have a difficult time copulating at your age." Kennedy also points to the statements of Greg Banbury ("Banbury"), a member of the Board of Directors of Danavox. In October 1993, Banbury stated to Kennedy, "you dress well for an old guy" and "fortunately, I'm not as old as you."

Kennedy challenges his termination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634, Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* and the Minnesota Human Rights Act ("MHRA"), Minn.Stat. § 363.01, *et seq.* Kennedy also asserts two common law challenges to his termination, breach of contract and negligent infliction of emotional

distress. Discovery is complete. Danavox moves for summary judgment on all counts.

## DISCUSSION

■ The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. at 2510–11.

■ On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2511–12. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immaterial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court addresses defendants' motion for summary judgment.

## A. Gender Discrimination

 The Civil Rights Act and the MHRA make it is an unlawful employment practice to discharge, or otherwise discriminate against an individual with respect to the terms and condition of employment because of that individual's race, color, religion, sex or national origin. 42 U.S.C. § 2000e–2(a)(1); Minn.Stat. § 363.03, subd. 1(2) (1994). Gender discrimination encompasses two forms of discrimination, disparate treatment due to gender and sexual harassment. Kennedy's complaint suggests that his theory of liability is quid pro quo sexual harassment in that he was terminated because he did not return the affections of Ormsby, his supervisor. Plaintiff's memorandum in opposition to defendant's motion, however, appears to disavow reliance on sexual harassment and instead relies on disparate treatment gender discrimination. The court rejects Kennedy's attempt to recast his cause of action. Although the court agrees that a man may state a claim of reverse sex discrimination, the facts at hand do not suggest differential treatment between Kennedy and similarly-situated women or any male-bias sufficient to support a claim of reverse sex discrimination.

 There are two forms of sexual harassment. Quid pro quo sexual harassment "occurs when submission to sexual conduct is made a condition of concrete employment benefits." *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1013 (8th Cir.1988) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1413 (10th Cir.1987)). Hostile work environment sexual harassment exists when sexual conduct has the purpose or effect of substantially interfering with an individual's employment or creating an intimidating, hostile or offensive work environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49 (1986); Minn.Stat. § 363.01, subd. 41 (1994).

 To establish a prima facie case of quid pro quo sexual harassment, Kennedy must show that: (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment in the form of sexual advances or requests for favors; (3) the harassment was based on sex; and (4) his refusal to submit to the unwelcome advances resulted in a tangible job detriment. *Cram v. Lamson & Sessions Co.*, 49 F.3d 466, 473 (8th Cir.1995) (citing *Kauffman v. Allied Signal, Inc.*, 970 F.2d 178, 186 (6th Cir.), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992)). "Title VII protects both male and female employees from discriminatory sexual harassment." *Quick v. Donaldson Co., Inc.*, 895 F.Supp. 1288, 1294 (S.D.Iowa 1995) (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986)). Kennedy, a male, is a member of the group of individuals protected against sexual harassment thus element one is satisfied. To satisfy element three, the harassment must be of a sexual origin. The court assumes without deciding that Ormsby's conduct was sufficiently sexual in nature to constitute actionable conduct. However, in his deposition testimony Kennedy admits that Ormsby did not wish to have a sexual relationship with him, thus belying the notion that Ormsby's conduct was sexual in nature. Kennedy Deposition, pg. 17, attached as Exhibit 1 to the affidavit of Karen Reilly. The court's consideration of elements two and four is dispositive.

 The gravamen of any sexual harassment claim, whether quid pro quo or hostile work environment, is that the alleged sexual conduct was unwelcome. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). Conduct is unwelcome if it is uninvited and offensive. Further, "[T]he correct inquiry is whether [plaintiff's conduct] indicated that the alleged sexual advances were unwelcome." *Id.* Examining Kennedy's conduct, there is no evidence that he ever indicated that any of Ormsby's conduct was unwelcome. Indeed, in his deposition, Kennedy admitted that none of Ormsby's actions made him feel harassed or uncomfortable with the exception of thank you notes signed "Love, Martie" or "Much love, Martie." Kennedy testified:

> Ms. Holstein: "In any event, in December of 1993 you didn't think she [Ormsby] was harassing you, did you?"
>
> Kennedy: "You know, the only time I felt that there was an area of being uncomfort-

able was when I received cards from her with the word love."

Ms. Holstein: "That's the only time you really felt you were being harassed?"

Kennedy: "That's when I felt uncomfortable."

Ms. Holstein: "In fact, the more appropriate word than harassed is uncomfortable, from what I gather of what you're saying today, correct?"

Kennedy: "Correct."

Kennedy Depo., pg. 35–36.

Kennedy himself characterized his feelings regarding this particular complimentary closing not as harassment but rather discomfort. There is no evidence that Kennedy verbally or nonverbally communicated this discomfort to Ormsby. The court finds that Kennedy's "discomfort", uncommunicated to Ormsby, over her choice of the word "love" as a closing in thank you notes is insufficient to created a question of fact regarding the unwelcomeness of Ormsby's conduct. Moreover, during this same period, Kennedy gave Ormsby an expensive and personal Christmas gift, a wooden stamp box, conduct directly at odds with any communication to Ormsby that her conduct was unwelcome.

■■■ Kennedy has also failed to present evidence sufficient to create a question of fact regarding whether his termination was based on his refusal to return Ormsby's "affections." There is no evidence that Ormsby ever linked her "affections" for Kennedy with the retention of his job. Nor is there any evidence that Kennedy rejected or spurred Ormsby's "affections" or any other evidence of a connection to his termination. Kennedy's subjective belief that a causal connection exists is insufficient to meet his burden of production. Kennedy has failed to establish essential elements of his sexual harassment claim, thus, summary judgment in favor of Danavox is warranted. Liability for employment discrimination under the MHRA is interpreted with reference to the standard established by the federal courts in applying Title VII, see *Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 442 (Minn.1983), except that Minnesota courts have not adopted *St. Mary's Honor Center v. Hicks,* 509 U.S. 502,

113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *See Hasnudeen v. Onan Corp.,* 531 N.W.2d 891 (Minn.Ct.App.1995), *review granted* (July 20, 1995). Thus, for the reasons stated, summary judgment on Kennedy's claim for quid pro quo sexual harassment under the MHRA is granted.

## B. Age Discrimination

■■■■ The ADEA provides, in pertinent part, that:

"It shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

29 U.S.C. § 623(a). The elements of a prima facie case of age discrimination in the termination context are: (1) plaintiff is within the protected age group; (2) he met the applicable job qualifications; (3) he was discharged; and (4) the employer assigned, at least temporarily, a younger person with no better credentials to do the same work. *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433; *Krenik v. County of Le Sueur,* 47 F.3d 953, 958 (8th Cir.1995). Once plaintiff proves his prima facie case, the burden of production shifts and the employer must come forward with a legitimate, nondiscriminatory reason for the dismissal. *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 776–77 (8th Cir.1995). If the employer comes forward with such a reason for the termination decision, the burden shifts back to the plaintiff to demonstrate that the proffered reasons were merely a pretext for age discrimination. *Id.* At all times, the plaintiff carries the burden of persuasion to show that the adverse employment action was motivated by intentional discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 510–12, 125 L.Ed.2d 407, 113 S.Ct. 2742, 2749 (1993). To avoid summary judgment, plaintiff must demonstrate an ability to prove the four prima facie elements and he must establish the existence of facts which if proven at trial would permit a reasonable jury to conclude that the employer's proffered reasons were

pretextual and that intentional discrimination was the true reason for the termination decision. *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir.1995) (citation omitted).

■ Kennedy is 62 years old, was discharged and was replaced with a younger woman. Danavox argues, however, that Kennedy cannot establish a prima facie case because he cannot demonstrate that he was performing his job satisfactorily when he was terminated. Kennedy relies on two facts to demonstrate that he was performing his job satisfactorily. First, Kennedy points to the fact that no one told him he was performing poorly. Second, Kennedy highlights the $5,000 bonus he received in early 1994. The first fact is not evidence of anything absent comparative evidence. Second, it is undisputed that the bonus Kennedy received was based on company-wide sales figures in 1993, not his personal performance. Thus, this fact is only marginally probative of Kennedy's personal performance. As Danavox points out, however, under the terms of his employment contract, Kennedy was entitled to receive a $15,000 bonus. Kennedy has presented no other evidence that he was meeting the legitimate expectations of Danavox. Moreover, Kennedy acknowledges that employees in his department complained of his performance and that the complaints were communicated to management. Kennedy depo. pg. 49–50. Thus, the court concludes that Kennedy has failed to come forward with sufficient evidence from which a reasonable jury could conclude that he was performing satisfactorily at the time of his termination.

■ Even assuming that Kennedy set forth a prima facie case, his claim must fail. Danavox articulated a legitimate, non-discriminatory reason for Kennedy's termination, poor leadership and management skills. Kennedy must then come forward with evidence from which a jury could conclude that the reasons were a mere pretext and that intentional discrimination caused his termination. This he has failed to do. Instead, Kennedy attempts to support his claim of discrimination based on "permissible inferences" from undisputed facts. Kennedy's in-ferences, however, are not reasonable but rather are nothing more than speculation.

Kennedy also asserts he has direct evidence of discrimination. As noted, Kennedy relies on a typographical error ("Glenn [Kennedy] still copulating") and the corresponding statement repeated at a sales meeting that "You [Kennedy] would have a difficult time copulating at your age," as well as statements by Banbury in October 1993, to Kennedy that, "you dress well for an old guy" and "fortunately, I'm not as old as you." There is no evidence that Banbury played any part in the decision to terminate Kennedy. Thus, his remarks do not support Kennedy's claim of discrimination. *See Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 545 (3d Cir.1992) (stray remarks of nondecisionmakers should be given little weight), (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 109 S.Ct. 1775, 1804–05, 104 L.Ed.2d 268 (1989) (O'Connor, J. concurring)). Kennedy attributes one remark to Ormsby, which she denies making. Assuming she made the statement, Kennedy acknowledges that the circumstances surrounding the "copulating" statement were considered humorous by everyone, including Kennedy. Kennedy Depo., pg. 10. This is hardly evidence of a discriminatory animus based on Kennedy's protected status. Kennedy has failed to demonstrate that his termination occurred under circumstances which give rise to an inference of age discrimination. Thus, the court grants the motion of Danavox for summary judgment on this claim under the ADEA and the MHRA.

## C. State Law Claims

■ Kennedy also alleges breach of contract and negligent infliction of emotional distress. These claims are without merit. Kennedy waived any breach of contract claim he may have had by failing to object to the alleged breach when he was offered 90 days severance or an alternative 90 day position. In any event, Kennedy received more than he was entitled to under his employment agreement (90 days severance versus 30 days severance), thus, he cannot establish damages, a necessary element of his breach of contract claim. As to his negligent infliction

874

of emotional distress claim, Kennedy does not claim a personal injury or that he was within the requisite zone of danger. Rather, Kennedy's "claim for negligent infliction of emotional distress is dependent on [his] showing a direct invasion of rights, such as defamation, malicious prosecution, or other willful, wanton, or malicious conduct." *Schibursky v. IBM*, 820 F.Supp. 1169, 1185 (D.Minn.1993) (citing *Lee v. Metropolitan Airport Commission*, 428 N.W.2d 815, 823 (Minn.Ct.App.1988)). Even if a breach of contract claim could provide the underlying right, his dependent claim cannot survive the dismissal of the underlying breach of contract claim.

### D. Individual Liability

The court need not resolve the question of whether Ormsby, as Kennedy's supervisor, may be liable under Title VII as Kennedy's claims of discrimination do not withstand summary judgment. *See Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377, 380 (8th Cir.1995) (leaving open the question of whether an individual employment may be liable under Title VII if the employee is the plaintiff's supervisor). Ormsby was not a party to the employment agreement thus she cannot be held personally liable of any breach, even had this claim survived. Similarly, as Kennedy has failed to state a viable claim of negligent infliction of emotional distress this claim asserted against Ormsby must also be dismissed.

### CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that defendants' motion for summary judgment is granted. Summary judgment in favor of Danavox and Ormsby is granted on Counts I–IV of Kennedy's complaint. The counterclaims of Danavox remain.