Robert **HASNUDEEN** and Tracy
Hines, Appellants,

v.

**ONAN CORPORATION, Respondent.**

No. CX–94–2106.

Court of Appeals of Minnesota.

May 23, 1995.

Review Granted July 20, 1995.

Richard A. Beens, Brad J. Miller, Felha-ber, Larson, Fenlon & Vogt, P.A., Minne-apolis, for appellants.

John M. Anderson, Mark R. Whitmore, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL and MANSUR,* JJ.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-pointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

MARTIN J. MANSUR, Judge.

Appellants brought this suit alleging that respondent violated the Minnesota Human Rights Act by unlawfully discriminating against appellants. Appellants challenge the trial court's denial of their posttrial motion for amended findings or for a new trial. Appellants argue that reversal is warranted because: (1) the trial court erroneously implemented a mixed motive analysis which appellants claim has been rejected by the Minnesota Supreme Court; (2) the trial court's finding that appellants were not discriminated against is clearly erroneous; and (3) the trial court impermissibly made a legal distinction between a "hostile work environment" claim and a "discriminatory discharge" claim. We agree and reverse.

## FACTS

Appellants Robert Hasnudeen and Tracy Hines were employed by respondent Onan Corporation. Hasnudeen is considered to be of East Indian ancestry and Hines is half Native American.

Hasnudeen began working at Onan as a temporary employee in 1981 and later became a regular, full-time employee. Hines began working at Onan as a temporary employee in June 1988 and became a regular, full-time employee in February 1989. Hasnudeen and Hines worked in the same department. Sometime in late 1988, Hasnudeen was promoted to "lead worker" of his department. The supervisor of the department on appellants' shift was Gerald Mattson.

Appellants started dating each other shortly after Hines began working at Onan. After co-workers found out about the relationship, some of them began to make disparaging remarks about the relationship. For example, Hines testified that one co-worker asked her on one occasion if she "was still f------ the snot out of the nigger." In addition, co-workers used phrases such as "Nigger Bob", "Foreigner", "Midnight", "Sand Nigger", and "Julio" to refer to Hasnudeen. Further, some co-workers told Hines that Hasnudeen was saying negative things about her. When

Hines asked Hasnudeen about this, he denied making any comments and assured her it would stop.

On March 24, 1989, appellants were involved in a dispute on work premises during work hours. Hines became upset because she heard another rumor that Hasnudeen had made negative comments about her. Hines approached Hasnudeen and began shouting at him. Appellants then went into a nearby, glass-enclosed office. Hines told Hasnudeen that she wanted to quit and on several occasions attempted to pick up the phone and call a supervisor to quit, but each time Hasnudeen took the phone away.

Onan has a rule against physical fighting, the violation of which may result in termination. After another worker reported the incident to a supervisor, appellants were interviewed about the incident. Onan's Human Resources Department then conducted an investigation and interviewed a number of employees who were working in the area at the time of the incident. The investigation resulted in conflicting versions: some employees reported that they saw appellants physically fighting while other employees stated that they did not see any physical contact.

Following the investigation, a committee comprised of Mattson, Harold Rousselow (production superintendent), and Gary Boyd (manager of Human Resources Department) decided to terminate appellants. They cited fighting as the reason for Hines' termination. With regard to Hasnudeen, the committee concluded that his denial of any physical confrontation with Hines constituted lying.

Subsequently, appellants initiated this action alleging that Onan violated the Minnesota Human Rights Act by unlawfully discriminating against them. Appellants claimed that respondent discriminated against Hasnudeen because of his race in violation of Minn.Stat. § 363.03, subd. 1(2)(b) (1990), and that respondent discriminated against Hines because of her association with Hasnudeen, in violation of Minn.Stat. § 363.03, subd. 7(2) (1990). Following a bench trial, the court issued its decision. Although the trial court found that appellants worked "in a racially-

charged atmosphere," the court dismissed appellants' claims. Appellants then moved for amended findings or, alternatively, a new trial. Appellants claimed that the trial court committed errors of law and that the decision was not supported by the evidence. The trial court denied appellants' motion and this appeal followed.

## ISSUES

1. Did the trial court correctly apply the law?

2. Was the trial court's finding of no discrimination clearly erroneous?

## ANALYSIS

■ 1. Appellants first challenge the trial court's denial of their posttrial motion for amended findings or for a new trial by arguing that the trial court erroneously applied the law. A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

■ Appellants argue that the trial court improperly applied the law in its analysis of the third step of the *McDonnell Douglas* test. Under the Minnesota Human Rights Act, it is discriminatory "[f]or an employer, because of race, color, creed, religion, national origin, [or] sex * * * to discharge an employee." Minn.Stat. § 363.03, subd. 1(2)(b) (1990). Further, it is discriminatory for an employer to engage in reprisal against a person because that individual is "[a]ssociated with a person or group of persons * * * who are of [a] different race, color, creed, religion, or national origin." Minn.Stat. § 363.03, subd. 7(2) (1990).

When a plaintiff brings an employment discrimination cause of action, Minnesota courts have consistently applied the analysis adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Sigurdson v. Isanti County*, 386 N.W.2d 715, 721 (Minn.1986) (holding that in claims brought under the Minnesota Human Rights Act the trial court "must explicitly apply the three-step *McDonnell Douglas* analysis"). This "analysis consists of a prima facie case, an answer, and a rebuttal." *Sigurdson*, 386 N.W.2d at 720.

Initially, "the plaintiff must present a prima facie case of discrimination by a preponderance of the evidence." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)). To establish a prima facie case, a plaintiff must show that she or he

(1) [i]s a member of the protected class; (2) was qualified for the position from which she [or he] was discharged; and (3) was replaced by a non-member of the protected class.

*Feges v. Perkins Restaurants, Inc.*, 483 N.W.2d 701, 711 (Minn.1992) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824).

■ If the plaintiff establishes a prima facie case, a presumption of unlawful discrimination is created and the employer then has the burden of production to show legitimate, nondiscriminatory reasons for its actions. *Sigurdson*, 386 N.W.2d at 720 (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094). Finally, if the employer is successful, the plaintiff has the burden to show that the employer's proffered reason "is actually a pretext for discrimination." *Id.* (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095). The plaintiff can do this "by proving that it is more likely than not that the proffered reason is (1) a pretext for discrimination or (2) not worthy of belief." *Feges*, 483 N.W.2d at 711 (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

Both parties appear to concede that the first two steps of the *McDonnell Douglas* analysis have been satisfied. Appellants established a prima facie case and respondent offered a legitimate, nondiscriminatory reason for their termination. The dispute concerns the third step in the analysis. Appellants contend that the trial court's reliance on *St. Mary's Honor Center v. Hicks* was erroneous. —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In particular, the trial court cited the following passage from *Hicks* regarding a plaintiff's rebuttal burden:

[A] reason cannot be proved to be "a pretext *for discrimination*" unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

*Id.* at ——, 113 S.Ct. at 2752 (emphasis in original). Appellants claim that this is merely a restatement of the "mixed-motive" analysis articulated by federal courts in Title VII cases. *See Haskins v. United States Dep't of Army*, 808 F.2d 1192, 1197–98 (6th Cir.1987) (outlining plaintiffs' and defendants' burdens in a mixed-motive case), *cert. denied* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987). Pursuant to the mixed-motive doctrine, even if there was discrimination, no cause of action lies if the same decision would have been made in the absence of discrimination. *Id.*

According to appellants, however, this "mixed-motive" analysis was rejected by the Minnesota Supreme Court in *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619 (Minn.1988). In *Anderson*, the court expressed concern that in a mixed-motive case,

> the plaintiff must rebut the employer's claim that the discharge decision would have been the same absent the prohibited discrimination—not an easy task. Placing this burden upon the plaintiff increases the probability that a victim of admitted discrimination may be denied compensation unless the victim has literally proved that discrimination was the sole cause of the discharge.
>
> On the other hand, the public policy underlying and embodied in the Human Rights Act, even in so called "mixed-motive" cases, can be, and is, well served by continued adherence to the principles of analysis set forth in *McDonnell Douglas* and our line of cases applying it to disparate treatment claims arising under the act.

*Id.* at 626. The court then outlined the third step of the analysis in the following way:

Once a legitimate reason has been offered, the employee has the final burden of demonstrating that the proffered reason was not the true reason for employer's actions. The trial court's task is to determine whether the employee has met this burden. The court's characterization of the employer's motives is immaterial at the third stage of the analysis. The question is solely whether or not the court is persuaded that the employee has been the victim of intentional discrimination.

*Id.* (quoting *Anderson v. Hunter, Keith, Marshall & Co.*, 401 N.W.2d 75, 81 (Minn. App.1987)). Thus, while *Hicks* requires a plaintiff to demonstrate both the falsity of the employer's reason and that discrimination was the real reason, *Anderson* focuses solely on whether the plaintiff "has been the victim of intentional discrimination."

Given the directive in *Anderson* to focus solely on whether a plaintiff has been the victim of intentional discrimination, it was error for the trial court to rely on *Hicks*. Despite the trial court's attempt to recast its analysis in the court's order denying appellant's posttrial motion, this does not cure the trial court's original error. In short, reversal is necessary to prevent the implication that the trial court used the wrong analysis. This is especially true given the importance of the third step in the analysis. Most plaintiffs are able to establish a prima facie case (or they may not bring a cause of action). Similarly, as *Anderson* implies and as was the case here, most employers will be able to produce a legitimate, nondiscriminatory reason for termination. *See Anderson*, 417 N.W.2d at 626. Thus, the third step in the analysis becomes crucial to a trial court's decision. Because the trial court applied the more rigid federal standard rather than the *Anderson* analysis, reversal is warranted.[1]

---

**1.** The dissent claims that at the pretext stage, the plaintiff must prove that discrimination was the causative factor in the discharge. We cannot agree. The Minnesota Supreme Court explicitly rejected the dissent's analysis when it stated: [N]ot only is the [mixed-motive analysis] at odds with our cases, * * * but also [] its adoption for use in disparate treatment cases would defeat the broad remedial purposes of the Minnesota Human Rights Act by permitting employers, definitionally guilty of prohibited employment discrimination, to avoid all liability for the discrimination provided they can prove that other legitimate reasons may *coincidentally exist that would have justified the discharge.*
*Anderson*, 417 N.W.2d at 626 (emphasis added).

2. Appellants also claim that the trial court's finding that appellants were not discriminated against was clearly erroneous. We agree. Pursuant to Minn.R.Civ.P. 52.01, a trial court's

[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01. Further, "[t]he standard for review of a bench trial is broader than the standard for jury verdicts." *Runia v. Marguth Agency*, 437 N.W.2d 45, 48 (Minn.1989). Finally,

this court will only reverse a trial court's findings of fact if, upon review of the entire evidence, we are "left with the definite and firm conviction that a mistake has been made."

*In re Guardianship of Dawson*, 502 N.W.2d 65, 68 (Minn.App.1993) (quoting *Gjovik v. Strope*, 401 N.W.2d 664, 667 (Minn.1987)), *pet. for rev. denied* (Minn. Aug. 16, 1993).

Despite this standard of review, we conclude that the trial court's findings were erroneous. First, the trial court acknowledged that appellants worked "in a racially-charged atmosphere." Second, the trial court stated that the supervisors should have investigated appellants' claims that people were making derogatory comments about them. This indicates that the trial court apparently believed that the supervisors were aware of the negative comments made by co-workers before appellants' termination. Third, the trial court conceded that appellants "may have had the potential for a 'hostile work environment' claim." Fourth, both appellants had previously received consistently high marks on performance evaluations and had both been promoted. In other words, the March 24 dispute was the first formally documented negative incident involving either Hasnudeen or Hines. Finally, there was testimony concerning previous instances of fights, some between white males, which did not result in termination. In short, it is difficult to understand how the trial court could acknowledge the significant presence of racial animosity toward appellants and yet, still conclude that there was no discriminatory discharge.

An examination of the trial court's analysis may be instructive. In its discussion, the trial court states the following:

Onan's supervisors probably should have investigated those rumors and disciplined employees who were saying such things. However, that doesn't change the fact that the committee had reason to believe that plaintiffs had indeed been fighting, in violation of a company rule, and also that they were lying by denying the fight.

This language supports the argument that the trial court recognized the racial animosity present during appellants' employment. The trial court appears to base its ultimate decision on the fact that respondent also had a nondiscriminatory reason for terminating appellants. As discussed earlier, however, this is not the correct focus. *See Anderson*, 417 N.W.2d at 626. In sum, the facts of the case as well as the trial court's own findings seem to lead to the conclusion that respondent exhibited discriminatory practices. Thus, reversal is necessary because "we are 'left with the definite and firm conviction that a mistake has been made.'" *In re Guardianship of Dawson*, 502 N.W.2d at 68 (quoting *Gjovik*, 401 N.W.2d at 667).

Appellants also argue that the trial court impermissibly distinguished between a "hostile work environment" claim and a "discriminatory discharge" claim. Because we conclude that reversal is warranted on other grounds, we do not reach this issue.

## DECISION

The trial court erred in its application of a mixed motive analysis regarding the third step in the *McDonnell Douglas* analysis. Moreover, given the substantial evidence to the contrary, the trial court's finding that there was no discrimination was clearly erroneous.

**Reversed.**

RANDALL, Judge (dissenting).

I respectfully dissent. I conclude the trial court applied the appropriate legal standard to appellants' claim. I would uphold the trial

court's finding that appellants' discharge was not pretextual, but was for bona fide reasons.

The majority considers the trial court's reliance on *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1992), erroneous and indicative of a "mixed motive" analysis. I cannot agree. *Hicks* did not involve a "mixed motive" analysis. *Hicks* discussed a plaintiff's burden to prove defendant's proffered reason was a pretext:

> The dissent takes this to mean that if the plaintiff proves the [employer's] asserted reason to be *false,* the plaintiff wins. But a reason cannot be proved to be "a pretext *for discrimination"* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.

*Hicks,* —— U.S. at ——, 113 S.Ct. at 2752 (emphasis in original). *Hicks* simply elaborated on the third step of *McDonnell Douglas,* which emphasized plaintiff's burden was to prove employer's conduct was intentionally discriminatory.

The federal standard found in *Hicks* is not, as the majority suggests, more rigid than the *Anderson* analysis. In *Anderson,* the Minnesota Supreme Court stated:

> Once a legitimate reason has been offered, the employee has the final burden of demonstrating that *the proffered reason was not the true reason* for [the] employer's actions. The trial court's task is to determine whether the employee has met this burden. The court's characterization of the employer's motives is immaterial at the third stage of the analysis. The question is solely whether or not the court is persuaded that *the employee has been the victim of intentional discrimination.*

*Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 626 (Minn.1988) (quoting *Anderson v. Hunter, Keith, Marshall & Co.,* 401 N.W.2d 75, 81 (Minn.App.1987) (emphasis added)).

*Hicks* and *Anderson* both require plaintiff show employer's asserted reason is not a pretext and require the trier of fact be convinced there was intentional discrimination on the part of the employer. *Hicks* was responding to the claim that, in order to satisfy the third part of *McDonnell Douglas,* plaintiff need only show employer's asserted reason was false. *Hicks* emphasized plaintiff's burden in a discriminatory discharge claim is to prove that discrimination was the real reason for plaintiff's discharge.

Similarly, *Anderson* discussed how a plaintiff demonstrates that an employer's asserted reason for plaintiff's discharge is false. *Anderson* emphasized *the essential question is whether the employee had been the victim of intentional discrimination.* Thus, both the federal and *Anderson* standards require the trier of fact be convinced plaintiff's discharge was the result of intentional discrimination.

The majority believes the trial court was clearly erroneous in finding appellants were not the victims of intentional discrimination. I cannot agree. Although the trial court did find that appellants were subjected to derogatory comments, at various times by co-employees, the trial court still concluded their discharge was for legitimate reasons. The trial court is entitled to deference on a factual finding. The majority asserts the trial court reached its conclusion because it found respondent *also* had a non-discriminatory reason for discharging appellants. Like the trial court, I conclude the only reason for appellants' discharge was the legitimate one, and that discrimination was not a co-reason.

Discrimination by co-employees in the workplace does not, per se, satisfy the third part of *McDonnell Douglas* for a "discriminatory discharge" claim. Discrimination must be the causative factor in the discharge. *See Hicks,* —— U.S. at ——, 113 S.Ct. at 2752 (holding must show discrimination was real reason for discharge); *Feges v. Perkins Restaurants, Inc.,* 483 N.W.2d 701, 711 (Minn. 1992) (plaintiff failed to prove her age was real reason for termination).

If employees are required to show only that they suffered some discrimination at the hands of co-employees during their employment, employers will be prevented from ever discharging an employee who has ever experienced discrimination. Unless the employee is required to tie the discharge to the discrimination, simply pointing out past discrim-

ination would always satisfy a discriminatory discharge claim.

The trial court determined the fighting incident and appellants' attempt to lie about it were bona fide reasons for termination. I find the trial court's conclusion is supported by the record.

I would affirm.