_____

No. 95-2562
_____

Steven G. Rothmeier,               *
                                   *
          Appellant,               *
                                   *   Appeal from the United States
     v.                            *   District Court for the
                                   *   District of Minnesota.
Investment Advisers, Inc., a       *
Minnesota corporation; Noel P.     *
Rahn, an individual,               *
                                   *
          Appellees.               *

_____

          Submitted:  December 13, 1995

          Filed:  June 7, 1996
_____

Before BOWMAN and LOKEN, Circuit Judges, and SCHWARZER,[*] District Judge.

_____

BOWMAN, Circuit Judge.


     Steven G. Rothmeier brought this suit against his former employer,
Investment Advisers, Inc. (IAI), alleging that he was fired on the basis
of his age in violation of the Age Discrimination in Employment Act (ADEA),
29 U.S.C. §§ 621-634 (1994), and the Minnesota Human Rights Act (MHRA),
Minn. Stat. §§ 363.01-363.20 (1994).  The District Court[1] granted summary
judgment in favor of IAI,[2] and Rothmeier appeals.  We affirm.

_____

          *The  HONORABLE  WILLIAM  W.  SCHWARZER,  United  States
     District Judge for the Northern District of California,
     sitting by designation.

     [1]The Honorable Michael J. Davis, United States District Judge
for the District of Minnesota.

          [2]Rothmeier  also  sued  his  supervisor,  Noel  P.  Rahn,
individually under the ADEA.  The District Court dismissed this
claim, holding that a supervisor may not be held individually
liable under the
ADEA.  Cf. Lenhardt v. Basic Inst. of Technology, Inc., 55 F.3d
377, 381 (8th Cir. 1995) (concluding supervisors may not be held
individually liable under Missouri Human Rights Act). Rothmeier

Rothmeier began working for IAI in 1989 at the age of forty- three. Less than four years later, in March 1993, Rothmeier was fired at the age of forty-six. IAI is a complex business enterprise of funds, subsidiary corporations, and general and limited partnerships. As its name proclaims, IAI is an investment advisor and makes money by procuring investment funds, which are managed for a fee by the various IAI divisions. Noel P. Rahn, the chief executive officer of IAI, hired Rothmeier to serve as president of IAI Capital Group, a division of IAI. In this position, Rothmeier oversaw two subsidiaries, the already successful Venture Capital Group and IAI International, a fledgling investment banking group headed by David Spreng. Under the auspices of IAI International, IAI created Great Northern Capital Partners to engage in merchant banking. A banking fund, called the Great Northern Fund, was organized as a limited partnership to raise monies for this merchant banking effort. At the time of Rothmeier's hiring, Rahn, who was then age fifty, knew that Rothmeier was over forty.

In March 1993, Rothmeier was informed by Linda Watchmaker, chief financial officer of the Venture Capital Group, that Investment Advisors Venture Management, Inc. (IAVMI), a wholly owned subsidiary of IAI, perhaps was not in compliance with Securities and Exchange Commission (SEC) registration rules. Watchmaker's information suggested that the financial exposure resulting from the registration problem was in excess of $11 million. On the basis of this information, Rothmeier undertook an investigation to determine whether IAVMI was in compliance with SEC rules. By March 15, 1993, Rothmeier had concluded that IAVMI was

---

does not raise any issue with respect to that ruling.

in violation of SEC regulations and reported this information to Rahn. Rothmeier then asked Rahn if he could see certain corporate records in furtherance of his investigation. Rothmeier insists that Rahn and IAI's in-house lawyers stonewalled because they wanted to "cover-up" the SEC problem. Rothmeier never received the documents he requested because Rahn fired him on either March 15 or March 17, 1993.[3] Rothmeier was replaced by David Spreng, who was then thirty-one years old. While at IAI, Rothmeier never received an unfavorable performance review and, just two weeks before his discharge, IAI paid Rothmeier a $50,000 bonus.

The District Court granted summary judgment to IAI on the ADEA and MHRA claims because the record was "bereft of any suggestion that there was any age based animus involved in the decision of IAI and Rahn to terminate Rothmeier." Rothmeier v. Investment Advisers, Inc., No. 3-94-431, Memorandum Opinion and Order at 8 (D. Minn. May 18, 1995). The court acknowledged that while there were problems between Rahn and Rothmeier, "those problems concerned certain aspects of the business relationship rather than [Rothmeier's] age." Id.[4]

We review the grant of summary judgment de novo, applying, as did the District Court, the summary judgment standards of Federal

---

[3]The parties dispute the actual date of Rothmeier's discharge. IAI maintains that it terminated his employment on March 15, 1993. Rothmeier, on the other hand, insists that he was fired on March 17, 1993. Because this factual dispute is immaterial to the resolution of this case, this Court, like the District Court, expresses no view on the matter.

[4]We note that Rothmeier also sued IAI for violating the Minnesota whistleblower statute, Minn. Stat. § 181.932 (1994), and the Minnesota dismissal for age statute, Minn Stat. § 181.81 (1994), and for breaching a common law fiduciary duty. The District Court, having dismissed the federal ADEA claim, declined to exercise supplemental jurisdiction with respect to these additional claims and dismissed them without prejudice. Rothmeier does not appeal the dismissal of these state-law claims.

Rule of Civil Procedure 56(c).  Michalski v. Bank of Am. Ariz., 66 F.3d 993, 995 (8th Cir. 1995).

## II.

We first address Rothmeier's ADEA claim.  The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Everyone age forty and older is within the class of persons whom the act seeks to protect.  29 U.S.C. § 631.  The hallmark of an ADEA disparate-treatment claim is intentional discrimination against the plaintiff on account of the plaintiff's age.  Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 775 (8th Cir. 1995).  There are two methods by which a plaintiff can attempt to prove intentional discrimination.  First, a plaintiff may satisfy his burden by presenting direct evidence of employment discrimination based on age.  In employment-discrimination cases, however, "[t]here will seldom be `eyewitness' testimony as to the employer's mental processes" because a shrewd employer will not leave a trail of direct inculpatory evidence for the plaintiff to bring into court.  United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983).  Recognizing that the "smoking-gun" case is rare, the Supreme Court has developed a second, indirect method of proof by which a plaintiff can satisfy his burden using circumstantial evidence.  In disparate-treatment cases based on circumstantial evidence, courts apply the now-familiar analytical framework of burden shifting developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981), and St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993).  Rothmeier's case relies solely upon circumstantial evidence, and thus is governed by the McDonnell Douglas line of cases.

The McDonnell Douglas framework, using a three-stage burden-shifting analysis, establishes the order and allocation of proof in employment-discrimination cases.[5] At the first stage, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. Burdine, 450 U.S. at 252-53. The prima facie case, in the absence of an explanation from the employer, "creates a presumption that the employer unlawfully discriminated against the employee." Id. at 254.[6] If the plaintiff establishes a prima facie case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. Id. at 253. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case." Id. at 255 n.10. The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. Id. at 253. The plaintiff retains at all times the ultimate burden of persuading the trier of fact

---

[5]Although McDonnell Douglas is a Title VII case, the framework it establishes applies with equal force to claims under the ADEA. See, e.g., Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994) (applying McDonnell Douglas burden-shifting analysis in ADEA case). The Supreme Court has never had occasion to decide whether application of the Title VII rule to the ADEA context is correct, but the Court has "assume[d]" that it does apply for the time being. O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307, 1310 (1996).

[6]The phrase "prima facie case" has two possible meanings. First, it "may denote the establishment of a legally mandatory, rebuttable presumption." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 n.7 (1981). Second, it "may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue." Id. In the McDonnell Douglas context, prima facie case is given the more narrow first meaning; it is intended merely to be a legally mandatory, rebuttable presumption. Its purpose in the burden-shifting scheme is "to sharpen the inquiry into the elusive factual question of intentional discrimination." Burdine, 450 U.S. at 255 n.8.

that the adverse employment action was motivated by intentional discrimination. Id.

For purposes of its summary judgment motion, IAI concedes the existence of a prima facie case of age discrimination.[7] IAI's Br. at 12 nn.13 & 14. This concession created a presumption of age discrimination by IAI, requiring IAI to rebut it with nondiscriminatory reasons for Rothmeier's discharge. IAI proffered three nondiscriminatory reasons: the poor performance of IAI International; the failure of the Great Northern Fund to achieve its goals; and Rothmeier's purported insubordination and differences in management style between Rothmeier and Rahn. IAI having come forward with nondiscriminatory reasons for Rothmeier's discharge, the burden then shifted to Rothmeier to offer evidence showing that the reasons given by IAI were a pretext for discrimination. Rothmeier attempted to satisfy this burden by disputing each of IAI's proffered reasons. Where IAI asserted that IAI International lost millions of dollars, Rothmeier claimed that IAI International made over $1 million under his guidance and, in any event, David Spreng--the younger man who replaced him--headed that subsidiary. Where IAI claimed that the Great Northern Fund was failing, Rothmeier maintained that he had told an agreeable Rahn much earlier that it was unlikely the Fund would attain its goal and that, once again, David Spreng was in charge. Where IAI insisted that Rothmeier was insubordinate, Rothmeier argued that he possessed a heightened sense of business ethics and raised the SEC registration issue, not out of insubordination, but, rather, as an exercise of business ethics; he points out that he never received

---

[7]In a termination case that does not involve a reduction in force, a plaintiff establishes a prima facie case of age discrimination if he can show that he is a member of the protected age class, that he was performing adequately in his job, that he was fired, and that he was replaced by a younger person after his dismissal. Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 174 (8th Cir. 1992).

a negative performance review nor was he ever warned about any alleged insubordination or differences in management style.

Even though the District Court determined that Rothmeier had "plainly" created factual disputes with respect to whether IAI's proffered reasons were credible, it granted summary judgment to IAI because Rothmeier failed to present any evidence that tended to show that age was a determining factor in IAI's decision to fire him. Rothmeier v. Investment Advisers, Inc., No. 3-94-431, Memorandum Opinion and Order at 8 (concluding factual disputes shown in summary judgment record had "nothing to do with the critical issue before the court"--i.e., whether the termination was related to age).

Rothmeier argues that to survive IAI's motion for summary judgment, it is enough that he created factual disputes with respect to whether IAI's proffered reasons were pretextual; he insists that he did not have to take the additional step of showing, either directly or indirectly, that his termination was motivated by age-based animus. Rothmeier essentially argues that, once he establishes a prima facie case and presents evidence that IAI's proffered reasons for discharging him were pretextual, his case can withstand a summary judgment motion and is entitled to go to trial. We disagree. Under the Supreme Court's decision in St. Mary's Honor Center v. Hicks, the ruling of the District Court must be upheld.[8]

In Hicks, the Court resolved a circuit split regarding the proof an employee must have in order to prevail on an employment-discrimination claim under Title VII. Before Hicks, the federal courts of appeals were divided as to whether an employee could

_____

[8]Although the Hicks decision stemmed from an appeal from a full bench trial, its rationale applies with equal force to summary judgment proceedings. See O'Connor, 116 S. Ct. at 1309 (applying Hicks analysis in summary judgment context).

-7-

prove employment discrimination simply by showing that the employer's proffered reasons were false.  See Hicks, 113 S. Ct. at 2750 (collecting cases).  Some circuits, including our own, embraced the "pretext-only" rule.  Under this view, a showing that the employer's proffered explanation was false meant that the employee was automatically entitled to judgment.  Thus, according to these courts, a finding that the employer's explanation was not credible was "equivalent to a finding that the employer intentionally discriminated."  Duffy v. Wheeling Pittsburgh Steel Corp., 738 F.2d 1393, 1396 (3d Cir.), cert. denied, 469 U.S. 1087 (1984).  Other circuits, however, espoused the "pretext-plus" rule.  These courts required more than a simple showing that the employer's proffered reasons were false.  Pretext-plus courts demanded that an employee show discriminatory animus in addition to pretext.  In these courts, if the employee could do no more than show that the employer's reasons were not credible, judgment was automatically entered for the employer.

In Hicks, the plaintiff brought a Title VII action against his former employer, St. Mary's Honor Center, alleging that he had been unlawfully discharged because of his race.  Hicks established a prima facie case, St. Mary's proffered nondiscriminatory reasons for the discharge, and the district court, sitting as the trier of fact, found that the reasons St. Mary's gave were not the true reasons for the discharge.  Despite finding St. Mary's proffered reasons to be pretextual, the district court nevertheless granted judgment to St. Mary's because it also found that Hicks failed to prove that his employer's conduct was racially rather than personally motivated.  Hicks v. St. Mary's Honor Ctr., 756 F. Supp. 1244, 1252 (E.D. Mo. 1991) (subsequent history omitted).

We reversed on appeal, using the pretext-only rule as the basis for our decision.  We reasoned that once the district court determined that Hicks had established a prima facie case and that his employer's proffered reasons for the discharge were false, it

should have directed a verdict for Hicks. <u>Hicks v. St. Mary's Honor Ctr.</u>, 970 F.2d 487, 493 (8th Cir. 1992) (subsequent history omitted).

The Supreme Court reversed and remanded the case for further proceedings, holding, as this Court saw it, that "proof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext <u>for</u> discrimination." <u>Hutson</u>, 63 F.3d at 777 (citing <u>Hicks</u>, 113 S. Ct. at 2752). "[A] reason cannot be proved to be `a pretext <u>for discrimination</u>' unless it is shown <u>both</u> that the reason was false, <u>and</u> that discrimination was the real reason." <u>Hicks</u>, 113 S. Ct. at 2752. The Court thus rejected the pretext-only position and held that the factfinder's disbelief of the employer's reasons does not compel judgment for the employee. Instead, if the employer succeeds in carrying its burden of production, the presumption raised by the prima facie case is rebutted and drops from the case, rendering the <u>McDonnell Douglas</u> framework "no longer relevant." <u>Id.</u> at 2749. The trier of fact then proceeds to decide the ultimate question: whether the employee has proven that the employer intentionally discriminated against him because of his age. <u>Id.</u> The Court, however, also rejected the pretext-plus position, stating:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will <u>permit</u> the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, "[n]o additional proof of discrimination is <u>required</u>."

<u>Id.</u> (citation and footnote omitted) (alteration and second emphasis added by Supreme Court).

The Court thus struck a middle ground in <u>Hicks</u>, refusing to adopt either pretext-only or pretext-plus as the exclusive test for sufficiency of the evidence in employment-discrimination cases. Instead, the test fashioned by the Court for the third stage of the <u>McDonnell Douglas</u> analysis is more fact sensitive: whether the employee has provided evidence from which a reasonable factfinder could conclude that the employer intentionally discriminated against the employee for a prohibited reason. <u>Id.</u> This test is consistent with the Supreme Court's admonition that the presumption created by the prima facie case drops out of the picture after the employer has met its burden of production, thereby rendering the <u>McDonnell Douglas</u> framework no longer relevant. The factual inquiry then "proceeds to a new level of specificity," <u>id.</u> at 2752 (quoting <u>Burdine</u>, 450 U.S. at 255), and refocuses on the ultimate question in the case--whether the employer engaged in intentional discrimination. The Court reconciled its position by noting that "[e]ven though (as we say here) rejection of the defendant's proffered reasons is enough at law to <u>sustain</u> a finding of discrimination, <u>there must be a finding of discrimination</u>." <u>Id.</u> at 2749 n.4. Thus, the Court recognized that in some cases the overall strength of the prima facie case in conjunction with evidence of pretext will be sufficient to permit a finding of intentional discrimination, while in other cases the prima facie case in tandem with evidence of pretext will not be sufficient to permit a finding of intentional discrimination. <u>Hicks</u> explicitly requires evidence that will "suffice to show intentional discrimination." Only where the evidence of plaintiff's prima facie case and the evidence of pretext are sufficient, considered together, to allow a reasonable factfinder to conclude that the defendant has intentionally discriminated against the plaintiff is "no additional proof of discrimination . . . required." Whether or not a case requires evidence beyond a showing of pretext to support a finding of intentional discrimination is necessarily a fact-intensive determination and must be decided on a case-by-case

basis.  The First Circuit has recently explained the middle-ground approach developed in <u>Hicks</u>:

> [T]he Supreme Court envisioned that some cases exist where a prima facie case and the disbelief of a pretext <u>could</u> provide a strong enough inference of actual discrimination to permit the fact-finder to find for the plaintiff.  Conversely, we do not think that the Supreme Court meant to say that such a finding would <u>always</u> be permissible. . . . The strength of the prima facie case and the significance of the disbelieved pretext will vary from case to case depending on the circumstances.  In short, everything depends on the individual facts.

<u>Woods v. Friction Materials, Inc.</u>, 30 F.3d 255, 261 n.3 (1st Cir. 1994) (affirming summary judgment in favor of employer).

In the context of summary judgment, the question thus becomes whether, in a case where the employee has established a prima facie case and has presented sufficient evidence for a jury to disbelieve the reasons proffered by the employer, the trial court nevertheless may decide as a matter of law that the evidence is insufficient for a reasonable jury to infer age discrimination and therefore may grant summary judgment to the employer.  Rothmeier would have us answer this question in the negative. He argues that while <u>Hicks</u> prevents him from obtaining a compelled judgment based on evidence of pretext alone, pretext-only evidence is enough for him to withstand a summary judgment motion and get his case to a jury. Rothmeier is mistaken.  His argument construes <u>Hicks</u> too narrowly and ignores its middle-ground approach.  Rothmeier seeks a blanket statement that once evidence of pretext is proffered, that evidence along with the prima facie case always will shield a plaintiff from summary judgment. <u>Hicks</u>, of course, says no such thing.  We believe that <u>Hicks</u> allows a trial judge to decide on a motion for summary judgment that the evidence is insufficient for a reasonable trier of fact to infer discrimination even though the plaintiff may have created a factual dispute as to the issue of pretext.  Intentional discrimination <u>vel non</u> is like any other ultimate

-11-

question of fact: either the evidence is sufficient to support a finding that the fact has been proven, or it is not.  Indeed, <u>Hicks</u> emphasizes that once an employment-discrimination case reaches the third stage of <u>McDonnell Douglas</u>, it is to be treated like any other case.  Trial courts or reviewing courts should not "treat discrimination differently from other ultimate questions of fact."  <u>Hicks</u>, 113 S. Ct. at 2756 (quoting <u>Aikens</u>, 460 U.S. at 716).[9]

Post-<u>Hicks</u>, our Circuit's pronouncements on this issue have not been models of apparent consistency.  <u>Compare</u> <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 958 (8th Cir. 1995) ("To survive summary judgment at the third stage of the <u>McDonnell Douglas</u> analysis, a plaintiff must demonstrate the existence of evidence of some additional facts that would allow a jury to find that the defendant's proffered reason is pretext and that the real reason

---

[9]This point is bolstered further when the procedural context of <u>Hicks</u> is considered.  In reversing this Court, the Supreme Court in <u>Hicks</u> did not order us to affirm the district court's findings, as it would have done if the factfinder always has the final word in evaluating pretext evidence.  Instead the Court simply remanded, explaining:

> That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the factfinder to answer, <u>subject, of course, to appellate review -- which should be conducted on remand in this case under the "clearly erroneous" standard</u> . . . .

<u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2756 (1993) (emphasis added).

In other words, the Supreme Court in <u>Hicks</u> held that whether an employer's proffered reason was a pretext for unlawful discrimination is a question of fact, reviewable like any other question of fact.  After a bench trial, a trial court's finding of pretext-for-age-discrimination is reviewable for clear error.  After a jury trial, the jury's general verdict is reviewable under the standard for granting judgment as a matter of law.  And before trial, the issue may be considered under the well-known standard that governs motions for summary judgment.

-12-

for its action was intentional discrimination."); Hutson, 63 F.3d at 777 (following Krenik); and Nelson v. Boatmen's Bancshares, Inc., 26 F.3d 796, 801 (8th Cir. 1994) (holding employee "must do more than simply discredit an employer's nondiscriminatory explanation; he must also present evidence capable of proving that the real reason for his termination was discrimination based on age"); with Gaworski v. ITT Commercial Fin. Corp., 17 F.3d 1104, 1109 (8th Cir.) ("[I]f (1) the elements of a prima facie case are present, and (2) there exists sufficient evidence for a reasonable jury to reject the defendant's proffered reasons for its actions, then the evidence is sufficient to allow the jury to determine whether intentional discrimination has occurred, and we are without power to reverse the jury's finding."), cert. denied, 115 S. Ct. 355 (1994); and Kobrin v. University of Minn., 34 F.3d 698, 703 (8th Cir. 1994) (concluding plaintiff "may overcome summary judgment by producing evidence that, if believed, would allow `a reasonable jury to reject the defendant's proffered reasons for its actions'") (quoting Gaworski, 17 F.3d at 1109).  These cases, however, can be reconciled.

    In our recent decisions, we consistently have interpreted Gaworski to mean merely that "[i]n some cases, evidence that an employer's proffered nondiscriminatory explanation is wholly without merit or obviously contrived might serve double duty; it might serve the additional purpose of permitting an inference that age discrimination was a motivating factor in a plaintiff's termination."  Boatmen's Bancshares, 26 F.3d at 801 (emphasis added); see also Nelson v. J.C. Penney Co., 75 F.3d 343, 346 (8th Cir. 1996); Hutson, 63 F.3d at 777.  Only within the ambit of these double-duty cases is no additional proof of discrimination required.  Boatmen's Bancshares, 26 F.3d at 801.  As noted above, whether or not a case falls within this double-duty category is necessarily fact intensive and must be decided on a case-by-case basis by the district court.  Thus, Gaworski allows a plaintiff to rely on the same evidence to prove both pretext and intentional

discrimination, but, as our cases subsequent to Gaworski make clear, the overall strength of this evidence must be sufficient for a reasonable factfinder to infer that the employer's decision was motivated by discriminatory animus.  If the evidence considered as a whole does not satisfy that standard, then the plaintiff must come forward with "some additional facts," beyond the showing of a prima facie case and pretext, that would allow a jury reasonably to infer that the real reason for the adverse employment action was intentional discrimination.  Krenik, 47 F.3d at 958.   Accordingly, "evidence discrediting an employer's nondiscriminatory explanation is not necessarily sufficient (i.e., it is sufficient in some cases but not all cases) because an age-discrimination plaintiff cannot prevail unless `the factfinder . . . believe[s] the plaintiff's explanation of intentional discrimination.'"  Boatmen's Bancshares, 26 F.3d at 801 (quoting Hicks, 113 S. Ct. at 2754) (alterations in Boatmen's Bancshares).  This view acknowledges the middle ground forged by the Supreme Court when it stated in Hicks that the factfinder's disbelief of the employer's explanation may, together with the prima facie case, suffice to show intentional discrimination.  It is also consistent with the notion that the burden of persuasion as to the ultimate issue of intentional discrimination remains with the plaintiff at all times and that this burden is not necessarily satisfied merely by discrediting the employer's explanation.  Hutson, 63 F.3d at 777.  Consequently, the rule in this Circuit is that an age-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision.  The second part of this test sometimes may be satisfied without additional evidence where the overall strength of the prima facie case and the evidence of pretext "suffice[s] to show intentional discrimination."  The focus, however, always remains on the ultimate question of law: whether the evidence is sufficient to create a genuine issue of fact as to whether the

-14-

employer intentionally discriminated against the plaintiff because of the plaintiff's age.

Having carefully reviewed the record, we conclude that Rothmeier presented neither direct evidence of age discrimination nor sufficient circumstantial evidence for a reasonable factfinder to infer that Rothmeier's age "actually motivated" his employer's decision to discharge him.[10]  Boatmen's Bancshares, 26 F.3d at 800 (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).  Viewing the evidence in the light most favorable to Rothmeier, his prima facie case and his evidence of pretext are insufficient, as a matter of law, to allow a reasonable factfinder to infer intentional discrimination based on age.  There were undoubtedly problems between Rahn and Rothmeier, but those problems concerned their business relationship (e.g., Rothmeier's confronting Rahn with alleged SEC violations) rather than age.  Moreover, when hired by Rahn (who was himself age fifty at the time), Rothmeier was already forty-three years of age; when fired by Rahn, Rothmeier was forty-six.  These facts run counter to any reasonable inference of discrimination based on age.  See Lowe v. J.B. Hunt Transp., Inc., 963 F.2d 173, 175 (8th Cir. 1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later."); Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991) ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time

---

[10]Rothmeier asserts that the District Court required him to offer direct proof of intentional age discrimination as the sole method of avoiding summary judgment and that such a requirement is reversible error.  Rothmeier's Br. at 26, 28.  The District Court did no such thing.  The court simply noted that, in addition to there being no circumstantial evidence, the record also was entirely devoid of direct proof of age-based animus.  Rothmeier v. Investment Advisers, Inc., No. 3-94-431, Memorandum Opinion and Order at 8 (D. Minn. May 18, 1995).

span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer.").

Rothmeier acknowledges that he "was discharged because IAI wanted to cover up its SEC problems and keep the millions of dollars it illegally collected" in violation of SEC regulations. Rothmeier's Br. at 23. This acknowledgement standing alone would completely refute Rothmeier's claim of age discrimination. Consequently, Rothmeier attempts to cast his case as one of age discrimination by weaving an intricate web. He argues that IAI engaged in age discrimination when "Rahn terminated the older and more ethically mature Rothmeier and brought in younger, less experienced, and more easily controlled executives" like Spreng. Id. Rothmeier's argument boils down to the notion that with age comes greater ethical acumen. Because he is older, Rothmeier insists that he has attained greater sensitivity to ethical problems than his younger colleagues at IAI and, for this reason, he argues, he was able to confront Rahn and to refuse to participate in the purported cover-up of the alleged SEC violations. His younger colleagues, on the other hand, because of their youth and inexperience in the business world, were supposedly unable to stand up to Rahn when the alleged cover-up scheme was hatched. We find Rothmeier's argument to be ingenious, but to no avail, because it does not suffice as evidence of age discrimination. See Hazen Paper Co., 507 U.S. at 611 (holding discharge motivated by factor correlated to age, like vesting of pension fund benefits tied to seniority, is not proof of age-based discrimination). Rothmeier has tried to bootstrap his way into an age-discrimination claim by making an argument premised on a highly dubious correlation (and one for which he has offered no supporting evidence) between age and ethical behavior. For our part, we have no inclination to accept the assertion that the content of one's character is a proxy for age. As Rothmeier contends, he may have been fired because he chose to do the right thing by investigating

the alleged SEC violations.  If that is the true reason for his discharge, that fact undercuts, rather than supports, his claim that IAI fired him because of his age.

Based on our review of the record, we are thoroughly satisfied that the District Court was correct in granting IAI summary judgment on Rothmeier's ADEA claim.

## III.

We next turn to Rothmeier's age-discrimination claim under the MHRA. The District Court granted summary judgment to IAI on this state-law claim for the same reason that it granted summary judgment to IAI on the ADEA claim, namely that Rothmeier failed to satisfy the requirements of Hicks. Rothmeier argues that the federal standard fashioned in Hicks does not apply to MHRA claims.  Consequently, he contends that, even if he loses his ADEA claim on summary judgment because of Hicks, he should survive summary judgment on the MHRA claim because Minnesota state courts apply a more liberal standard to MHRA claims than federal courts apply to ADEA claims. We disagree.

We review this question of state law de novo.  Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).  While Rothmeier concedes that Minnesota courts apply the three-step McDonnell Douglas framework to MHRA claims, see Feges v. Perkins Restaurants, Inc., 483 N.W.2d 701, 710 (Minn. 1992); Sigurdson v. Isanti County, 386 N.W.2d 715, 719-20 (Minn. 1986), he argues that "the third step is more liberal and much more easily met under Minnesota law."  Rothmeier's Br. at 44.  In a recent 2-1 decision, the Minnesota Court of Appeals held it was error for the trial court to rely on "the more rigid federal standard" in Hicks when analyzing the third-step of McDonnell Douglas for MHRA claims.  Hasnudeen v. Onan Corp., 531 N.W.2d 891, 894 (Minn. Ct. App. 1995), review granted (July 20, 1995).  Hasnudeen interpreted Hicks as requiring "a

plaintiff to demonstrate both the falsity of the employer's reason and that discrimination was the real reason."  Id.  The Hasnudeen court determined that this test was inappropriate for MHRA claims; instead, the majority concluded that Minnesota Supreme Court precedent requires a trial court to focus "solely on whether the plaintiff `has been the victim of intentional discrimination.'"  Id. (quoting Anderson v. Hunter, Keith, Marshall & Co., 417 N.W.2d 619, 626 (Minn. 1988) (quoting case below, Anderson v. Hunter, Keith, Marshall & Co., 401 N.W.2d 75, 81 (Minn. Ct. App. 1987))).  We do not view our interpretation of Hicks as being inconsistent or more "rigid" than the holding in Hasnudeen.  Both interpretations require the trial court at the third-step of McDonnell Douglas to focus on the ultimate issue of the case: whether a plaintiff has been the victim of intentional discrimination.  The only reason that Hasnudeen characterized Hicks as "a more rigid federal standard" was because it mistakenly construed Hicks as adopting a pretext-plus rule as the exclusive test at the third stage of McDonnell Douglas analysis.  Our decision today shows that such a conclusion construes Hicks too narrowly and ignores the middle-ground approach developed by the Supreme Court.[11]

The Minnesota Supreme Court has held time and again that MHRA claims are to be construed in accordance with federal precedent.  See, e.g., Feges, 483 N.W.2d at 710 (applying McDonnell Douglas test to age-discrimination claim under MHRA); Anderson, 417 N.W.2d at 626 ("Courts of this state should continue to apply the McDonnell Douglas analysis in employment cases involving claims of disparate treatment brought under the Minnesota Human Rights Act . . . .").  We see no reason why the Minnesota Supreme Court

---

[11]The dissent in Hasnudeen correctly noted that there is no difference between the federal (Hicks) test and the Minnesota (Anderson) test.  Hasnudeen v. Onan Corp., 531 N.W.2d 891, 896 (Minn. Ct. App. 1995), review granted (July 20, 1995) (Randall, J. dissenting) ("[B]oth the federal and Anderson standards require the trier of fact be convinced plaintiff's discharge was the result of intentional discrimination.").

-18-

would deviate from federal precedent now.  Although the Minnesota Supreme Court has not yet passed upon this issue since <u>Hicks</u> was decided, it did grant review to <u>Hasnudeen</u>.  And while we do not view <u>Hasnudeen</u> as being at odds with our decision today, to the extent that it departs from using federal precedent to interpret MHRA claims, it is contrary to well-established Minnesota law and we are not bound by it.  <u>See</u> <u>Haugen v. Total Petroleum, Inc.</u>, 971 F.2d 124, 126 (8th Cir. 1992) (noting federal court may disregard decision of intermediate appellate state court if "it is convinced by other persuasive data that the highest court of the state would decide otherwise.") (quoting <u>West v. American Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940)).  Until the Minnesota Supreme Court decides otherwise, MHRA claims are analyzed in accordance with <u>McDonnell Douglas</u> and its progeny, including <u>Hicks</u>.  <u>Anderson</u>, 417 N.W.2d at 623 ("[W]e have frequently applied principles which have <u>evolved</u> in the adjudication of claims under the federal act, and, specifically we have adopted the <u>McDonnell Douglas</u> analysis as an aid to resolving cases claiming disparate treatment.") (emphasis added).  Rothmeier's reliance on <u>Hasnudeen</u> as establishing a different standard thus fails to save his MHRA claim.


## IV.


For the foregoing reasons, the judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-19-