**Terrance L. RADDATZ, Plaintiff,**

v.

**STANDARD REGISTER COMPANY, Defendant.**

**Civil No. 4–96–822 (JRT/RLE).**

United States District Court,
D. Minnesota.

Jan. 22, 1999.

Eric J. Nystrom, Winthrop & Weinstine, St. Paul, MN, for plaintiff.

Lynn G. Truesdell, III and Kevin P. Hickey, Bassford, Lockhart, Truesdell & Briggs, Minneapolis, MN, Kathryn A. Lamme, Turner, Granzow & Hollenkamp, Dayton, OH, for defendant.

## ORDER MEMORANDUM AND OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

This action arises out of defendant Standard Register Company's ("Standard") termination of plaintiff Terrance L. Raddatz. Raddatz, who was fifty-two years old when he was terminated, alleges Standard removed him on account of his age, in violation of the Age Discrimination and Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Minnesota Human Rights Act, Minn. Stat. §§ 363.01, *et seq.* ("MHRA").

This matter is before the Court on Standard's motion for summary judgment. Standard argues that Raddatz has failed to raise any genuine issue of material fact from which a reasonable jury could conclude that Standard discriminated against him on account of his age. For the reasons set forth below, defendant's motion is denied.

### BACKGROUND

Raddatz began working for Standard in 1969 as a sales trainee. He worked for Standard for the next twenty-five years during which he was promoted up the ranks of the sales force. On October 4, 1993 Raddatz was terminated from his position as Standard's district sales manager in the Minneapolis office.

During his tenure at Standard, Raddatz received numerous awards for his performance. He often received recognition for being among Standard's top sales people. He won the company's most prestigious award for a district sales representative only a few years prior to his termination. Moreover, Raddatz's supervisor gave him high marks for his performance for 1992–93, the fiscal year that directly proceeded his termination.

Standard contends it terminated Raddatz because he violated company rules when he let one of his sales people store a large order for Target Stores in an unauthorized ware-

house. Standard has a company policy and standard practice of using company warehouses to store products when there is such a warehouse in the relevant area. Standard discovered the use of the warehouse (which began in 1991) during a routine operational audit conducted in 1993. According to Standard, Raddatz had not received approval for using the unauthorized warehouse and for charging the expenses to the district office. Raddatz later acknowledged in his response to the July 26, 1993 audit report that the Target transaction was not "in tune with" company programs and that the costs of storage were charged to incorrect accounting codes. This incorrect accounting treatment apparently increased Standard's costs.

Standard also notes that Raddatz received extra commissions as a result of his accounting treatment of the Target transaction. Raddatz responds that the effect on his commissions was minimal (less than $50). He also points out that the accounting error benefitted a member of his sales force to a far greater extent than it benefitted him and that the other employee was not disciplined.

According to Raddatz, Standard suddenly terminated him in October 1993, without warning. He was replaced by a twenty-seven year old who, allegedly, had less than five years of experience with the company.

Raddatz does not dispute that he breached company policy; however, he argues that the "Target incident" was not the real reason for his termination, but only a pretext for the hidden company policy of termination of older employees. According to Raddatz, Standard knew about his actions regarding the Target order at all times, and everything was kept "above-board." Raddatz states that he had conversations regarding the Target order with Standard Register's director of traffic, the production plant, the warehouse manager, and Standard's CFO, Craig Brown.[1] In particular, Raddatz claims that Brown knew of the arrangement before the audit and neither expressed criticism of it nor de-

manded that it be changed. Raddatz also notes that when he wrote a reply to the auditor, he was coached in doing so by John Hodkin (one of his supervisors). He further contends that when he discussed the Target order with Marv Ross (Director of Stored Products) and Brown after the audit, at no time was discipline or termination mentioned. In fact, Ross made a notation that "Terry (Raddatz) will call the next time he gets the urge to go outside the dots."

Raddatz further asserts that the chosen storage of the Target order was the only way to secure an important client. Raddatz contends he and his staff were under time pressure to satisfy Target and receive its order, which ultimately resulted in almost $1,000,-000 in revenue for Standard. The parties dispute whether the Standard warehouse had sufficient space for handling the Target order. Raddatz claims that the authorized Standard warehouse did not have the space that he needed, at that time, to handle the Target order. Standard denies this.

Moreover, Raddatz insists his violation of company policy was relatively minor and cannot justify such harsh discipline. Standard's handbook has more than 500 pages of detailed policies and procedures, many of which, according to Raddatz, were violated on a daily basis. The policy Raddatz violated is contained in a single sentence within these policies and procedures. It states that "an operations plan for any new storage must be written and approved." Raddatz believes he never saw this policy. It also appears undisputed that no other Standard employee ever had been terminated for breaking this policy.[2]

Raddatz notes that despite the mild initial reactions to the audit, he suddenly was terminated without warning. He testified that he initially was given no explanation other than that he was being terminated for "that storage thing at Target." Standard re-

---

1.  Standard acknowledges that Raddatz discussed the Target matter with other company officials, but only after he received the audit report. This is disputed by Raddatz, who claims he talked to all of the above-named persons while attempting to make warehouse arrangements for the Target orders.

2.  Standard argues that the unauthorized use of the warehouse was not a minor error because it needs to be able to control the conditions of the warehouses and assure that the storage facility is insured and safe. Standard also claims that it takes inappropriate increases in commissions very seriously.

sponds that Raddatz was aware of the concerns of the company because numerous people were involved in the investigation following the audit. On January 13, 1994, Pete Redding (Standard's executive vice president) described the reason for Raddatz's termination in a reply to Raddatz's inquiry: "Directly related to your actions which violated the company's storage policy and procedures. Your decision to contract with an outside vendor to store a product and than to pay for this service using your office fund account was clearly a violation of company policy."

Raddatz offers two other types of evidence to demonstrate that Standard terminated him because of his age. Specifically, Raddatz points to various statements made by management regarding the sales force, and he offers affidavits of three former employees to establish that his termination was part of a continuing, nationwide pattern of age discrimination.

One of the alleged statements was made by Standard's CEO, John Darragh, at a dinner engagement. Darragh allegedly announced that "Standard's field management is inadequate. Two-thirds aren't worth a damn." Raddatz suggests that it is no coincidence that two-thirds of the district sales managers were over the age of forty at the time. Furthermore, Raddatz testified that Hodkin and Joe Schwan—two of the three individuals who made the decision to terminate Raddatz—apparently had made statements to the effect that "managers can't take us into the future. They're not computer literate. They did not grow up in a computer environment. They do not know how to use them. We're faced with a dilemma in the information age."

The three affidavits were submitted by former Standard sales managers: Donald J. Underwood, John LeCompte and Stephen A. Kelly. Kelly retired approximately one year after Raddatz was terminated. Underwood and LeCompte both were terminated by the company. Kelly believes he saw a pattern of older employees being terminated, and after becoming "disillusioned" with the company's treatment of older workers, he left Standard. Underwood believes that Standard set him up for termination because of his age. LeCompte notes that when he was fired after

eighteen years of service the only reason offered by Standard was that he was "not suited for the position." All three allege that they perceived a pattern of older workers being terminated, despite the fact that older employees' performance was equal to, or better than their younger replacements.

## ANALYSIS

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment, stating in pertinent part:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur,* 47 F.3d 953, 957 (8th Cir.

1995). Accordingly, the nonmovant "must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial." *Wilson v. Southwestern Bell Tel. Co.*, 55 F.3d 399, 405 (8th Cir.1995).

## II. Age Discrimination

The three-step burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) establishes the order and initial allocation of proof in age discrimination claims brought pursuant to the ADEA and the MHRA. *See, e.g., Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1332, 1338 (8th Cir.1996). In *Rothmeier*, the Eighth Circuit described the *McDonnell Douglas* framework as follows:

> At the first stage, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. The *prima facie* case, in the absence of an explanation from the employer, "creates a presumption that the employer unlawfully discriminated against the employee." If the plaintiff establishes a *prima facie* case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the *prima facie* case is rebutted and "drops from the case." The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. The plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.

*See id.* at 1332 (citations omitted).

For purposes of summary judgment, the parties agree that Raddatz has established a *prima facie* case of age discrimination and that Standard has offered a legitimate, nondiscriminatory reason for terminating Raddatz. The parties therefore have sustained their respective burdens comprising the first two steps of the *McDonnell Douglas* framework.

Turning to the third step, Raddatz has offered significant evidence that Standard's proffered reason for his termination was pretextual. Although Raddatz admits that he violated company policy, he points out that he discussed the circumstances surrounding the Target order with several Standard officials before the audit. According to Raddatz, these company officials and those conducting the audit initially showed little concern about his practices. Also, he offered a substantial explanation for varying from company policy, due to the particular circumstances surrounding the Target order. Moreover, the breach of company policy—including alleged unauthorized commissions—was fairly insignificant, particularly in light of his long and very successful association with Standard. Finally, his termination occurred without warning a number of months after the Standard officials became aware of the results of the audit.

Viewing all the evidence in a light most favorable to Raddatz, the Court finds that he has created a genuine fact dispute with regard to whether his breach of company policy was the real reason he was terminated. Thus, he has satisfied his burden of showing that Standard's proffered reason(s) for terminating him were pretextual.

However, case law subsequent to *McDonnell Douglas* makes clear that, to survive summary judgment, a plaintiff's evidence must do more than merely establish that he has a *prima facie* case of discrimination and that there is a fact dispute regarding pretext. Relying principally on the *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), the Eighth Circuit held in *Rothmeier* that the plaintiff must put forth evidence sufficient to raise fact dispute not only as to whether Standard's proffered reason is credible, but also as to whether the total mix of evidence creates an inference that age was a determining factor in his termination. *See* 85 F.3d at 1334. In other words, a plaintiff must adduce sufficient facts to support an inference that the employer's proffered reason for termination is pretext *for discrimination. See id.*

Raddatz first contends that he has sustained this burden because he has offered

additional evidence—above and beyond his evidence of pretext—that Standard terminated him because of his age. Specifically, Raddatz points to statements made by management regarding the sales force, and affidavits of three other employees allegedly establishing a "pattern" of age discrimination at the company. The Court finds these two types of evidence do not support an inference of discriminatory motivation, at least as presented in their current form.

The CEO's statements that "the field management is inadequate" and "two-thirds of them aren't worth a damn" help to establish that the CEO was unhappy with management in that field, but these statements do not suggest a discriminatory motive. Also, the Court does not believe a factfinder could infer that these statements were a reference to age simply because about two-thirds of the field management happened to be above the age of forty at the time. Moreover, Hodkin's and Schwan's statements about the information age and computer literacy do not tend to demonstrate age-based animus. Management's concerns about computer use and literacy are not inherently tied to age. Without more, these concerns do not demonstrate discriminatory intent even if such criticism implicates some older workers.

The second type of evidence—the three affidavits of other terminated or former employees—presents a slightly closer question. However, these three employees' experiences are not, alone, sufficient to establish a pattern of practice discrimination. *See, e.g., Roxas v. Presentation College,* 90 F.3d 310, 316–17 (8th Cir.1996) (finding that statistics may be used to help prove discrimination, but only when they form the basis for an analysis of all comparable employees).[3] Furthermore, the Court finds that the general observations these three former employees offer about Standard's alleged motives are unsupported by specific facts, lack foundation, and do not address the circumstances surrounding, or leading to, Raddatz's termination. While the Court does not rule out the possibility that these or other employees may be able to present well-founded and probative evidence regarding Standard's motivations at trial, the statements contained in the affidavits do not create a genuine fact dispute.

Thus, Raddatz has not produced direct or independent evidence of age discrimination. Yet the Court's inquiry does not end there. While *Rothmeier* clearly requires that Raddatz demonstrate at the summary judgment stage that he can sustain his ultimate burden of showing age was a determining factor in his termination, the court did not hold, as Standard suggests, that evidence in addition to the prima facie case and pretext evidence is needed to create an inference that age was the determining factor. The *Rothmeier* court expressly rejected such a "pretext plus" approach, stating as follows:

> [I]n some cases the overall strength of the prima facie case in conjunction with evidence of pretext will be sufficient to permit a finding of intentional discrimination, while in other cases the prima facie in tandem with evidence of pretext will not be sufficient to permit a finding of intentional discrimination .... Only where the evidence of plaintiff's prima facie case and the evidence of pretext are sufficient, considered together, to allow a reasonable factfinder to conclude that the defendant has intentionally discriminated against the plaintiff is "no additional proof of discrimination ... required." Whether or not a case requires evidence beyond a showing of pretext to support a finding of intentional discrimination is necessarily a fact-intensive determination and must be decided on a case-by-case basis.

*Id.* at 1334–35.

The court went on to find, in the particular circumstances in that case, that the plaintiff's *prima facie* case and the proffered evidence of pretext were insufficient alone to create an inference of intentional discrimination based on age. *See id.* at 1337. Most importantly, the court found that the fact that the plaintiff in that case was hired at forty-three and fired at forty-six (only three years later) by a single supervisor runs counter to any reasonable inference of discrimination based on age. *See id.* (citing other "single actor inference" cases). Again, however, the court expressly

---

**3.** Raddatz therefore has not shown that he can prove Standard's discriminatory intent through demonstrating a pattern or practice of discrimination against older employees.

stated that the *prima facie* case and pretext alone may be sufficient in certain circumstances. *See id.*

Eighth Circuit opinions subsequent to *Rothmeier* contain somewhat differing articulations of when or how often the *prima facie* case plus pretext evidence is sufficient alone to create an inference of discrimination. The Eighth Circuit's decision in *Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1102 (8th Cir. 1996), offers the most narrow reading. There the court held that pretext alone applies only "in the presumably rare scenario" in which a plaintiff's evidence of pretext serves the "double duty" of calling into question the proffered reason and independently supporting an inference that the real motivation was discrimination. *See id.* (discussing *Rothmeier* and earlier Eighth Circuit decisions).

In more recent opinions, however, the court used less strict language, and stated generally that a plaintiff can prove discrimination on the overall strength of his prima facie case and pretext evidence alone. *See, e.g., Young v. Warner–Jenkinson Co., Inc.*, 152 F.3d 1018, 1023 (8th Cir.1998); *Widoe v. District # 111 Otoe County Sch.*, 147 F.3d 726, 731 (8th Cir.1998); *see also Ryther v. KARE 11*, 108 F.3d 832, 837 (8th Cir.) (*en banc* ) ("The elements of the *prima facie* case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff."), *cert. denied,* —— U.S. ——, 117 S.Ct. 2510, 138 L.Ed.2d 1013 (1997). Furthermore, in *Ryther*, the Eighth Circuit (sitting *en banc* ) suggested that the prima facie case and a showing of pretext usually will be sufficient as long as the evidence presented is not inconsistent with a reasonable inference of age discrimination. *See* 108 F.3d at 837 ("The elements of the *prima facie* case remain, however, and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessari-

ly enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination."); *see also Young,* 152 F.3d at 1023 (same). Thus, although the precise standard is somewhat unclear, the law in this circuit remains that a *prima facie* case of discrimination combined with evidence of pretext may be sufficient alone to support an inference of discriminatory animus, at least in certain circumstances.

The Court believes that this case presents one of the circumstances in which, as contemplated in *Rothmeier* and its progeny, the *prima facie* case and evidence of pretext alone are sufficient to raise a reasonable inference of age discrimination. The Court finds that Raddatz's pretext evidence is quite strong. While he did violate a written company policy, the violation easily could be viewed as minor in light of Raddatz's continued success with the company. Also, his sudden termination could be viewed as suspect given his explanation to the company for why the violation occurred, other factors surrounding the context in which it occurred, the initial reactions to his conduct by Standard personnel, and the absence of any warning or disciplinary action prior to the date he was terminated. Viewing this pretext evidence in a light most favorable to Raddatz, a trier of fact could conclude that Standard's decision to terminate him—rather than imposing some less severe discipline or imposing no sanction at all—was contrived. From such a determination, combined with the fact that Raddatz was fifty-two years old when he was terminated and was replaced by a relatively inexperienced twenty-seven year old, a reasonable jury could infer that Standard's proffered reason is pretext for age discrimination.[4] Thus, Raddatz has met his burden at this stage of the litigation, and Standard's motion for summary judgment is denied.

### ORDER

Based on the foregoing, and all of the records, files, and proceedings herein, **IT IS**

---

4. Raddatz's extended tenure at the company, his age at the time, and the fact that there is no evidence that he was terminated by the person who hired him clearly distinguish the circum-

stances here from those that led the *Rothmeier* court to rule out the possibility of an inference of age discrimination in that case.

**HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 30] is **DENIED**.