Claryce D. GRAHAM, Plaintiff,

v.

ROSEMOUNT INC., HealthPartners, Inc., HealthPartners Administrators, Inc., and ChoicePlus, a Self–Insured Employee Benefits Plan, Defendants.

No. Civ. 97–1528 (DSD/JGL).

United States District Court,
D. Minnesota.

March 18, 1999.

such a stipulation.  *See Adkins v. Gibson,* 906   F.Supp. 345, 348 (S.D.W.Va.1995).

Sandra Rae Boehm, James Frederick Olney, Boehm Law Office, St Paul, MN, Paul–Bryan J. Zenke, Zenke Law Office, Forest Lake, MN, for Claryce D. Graham, plaintiff.

Douglas R. Christensen, Matthew E. Klein, Dorsey & Whitney, Mpls, MN, for Rosemount Inc., defendant.

Frederick E. Finch, Bassford Lockhart Truesdell & Briggs, Mpls, MN, for Healthpartners Inc., defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motions for summary judgment. Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants defendants' motions.

## BACKGROUND

In 1987, plaintiff Claryce Graham began working as a graphics coordinator for defendant Rosemount, Inc. at its facility in Eden Prairie, Minnesota. In Minnesota, Rosemount manufactures temperature, pressure, and flow measurement instruments for use in industrial markets. Graham's job at Rosemount was to assist in the production of written materials such as instruction manuals, marketing brochures, and newsletters. Throughout her time at the company, Graham received strong performance evaluations and was praised by her direct supervisors as an important factor in her work team's success. However, Graham's supervisors consistently noted that her intense interpersonal style tended to create friction between her and her coworkers.

In December 1994, Graham was diagnosed with cancer of the right breast. In January 1995, Graham informed Rosemount of her condition. Rosemount responded by allowing Graham frequent rest breaks and granting her flex time. After undergoing a lumpectomy early in 1995, Graham became dissatisfied with conventional cancer therapies and began pursuing alternative treatments. In April 1995, she began therapy under Dr. Stanislaw Burzynski, a Texas oncologist who treats cancer with the infusion of hormones called antineoplastins. Dr. Burzynski's therapeutic regime has not been approved by the Food and Drug Administration.

In the middle of May 1995, Graham's supervisors, Deb Waldhauer and Mark Walinske, were out of the country on business. During their absence, Rosemount employees David Brechon and Mary Fisher assumed supervisorial responsibility. On May 19, 1995, Graham became involved in a loud disagreement with Brechon and Fisher over how best to print material while waiting for the company's typesetting machine to be repaired. During the dispute, Graham resisted the specific instructions of Fisher and Brechon to transfer material to disk for printing by an outside company. On June 1, 1995, after Waldhauer and Walinske had returned from their trips, Waldhauer scheduled a meeting with Graham to discuss the incident.

Graham's version of what happened on June 1, 1995 is as follows: Waldhauer became immediately confrontational, and when Graham suggested that her cancer might be the real reason for Waldhauer's behavior, Waldhauer abruptly ended the meeting. Shortly thereafter, Walinske called Graham and Waldhauer into his office and began angrily criticizing Graham. At two points in the meeting, Graham mentioned that Mary Fisher's relationship with an outside printer might have played a role in the May 19, 1995 events. This suggestion infuriated Walinske, who ended the meeting and, with Waldhauer, walked Graham to the door, sending her home with pay.

Rosemount paints a different picture of events: According to Waldhauer, it was Graham, not Waldhauer, who became confrontational during their initial meeting.

When Waldhauer began discussing the May 19, 1995 incident, Graham immediately responded by shouting and waving a pamphlet in front of Waldhauer, asserting that she had rights as a cancer victim and that she was going to sue Rosemount. In response to this threat to sue, Waldhauer ended the meeting and went to Walinske's office for advice on how to proceed. Walinske decided to move the meeting into his office. In Walinske's office, Graham continued voicing her accusations in a highly emotional way, at times physically shaking and crying. At one point in the meeting, Graham accused Fisher of an inappropriate relationship with an outside vendor. Walinske warned her that such comments were out of bounds. When Graham repeated these accusations, Walinske terminated the meeting. Because of Graham's overwrought state, Walinske suggested that Graham take the remainder of that day and the next day off, with pay. Walinske and Waldhauer helped Graham gather her belongings at the cubicle, and then walked with her to the door.

Following this incident, Rosemount personnel met to discuss an appropriate course of action. Concluding that Graham's behavior ran the risk of causing more workplace disruptions, Rosemount determined that before being allowed to return to work, Graham must undergo a psychological fitness for duty examination by Dr. John Hung, a psychologist who had worked with Rosemount in the past. On June 7, 1995, Rosemount informed Graham that she could not return to work until passing this fitness for duty examination. When Graham refused to submit to this examination, Rosemount placed Graham on a leave of absence, although it continued her benefits under Rosemount's ERISA plan, ChoicePlus, during the leave period.

After June 7, 1995, Graham attempted to return to work on several occasions, but was informed each time by Rosemount that she had to be examined by Dr. Hung before she could work. In March 1996, Graham filed age and disability discrimination claims with the EEOC, charges ultimately dismissed by the EEOC with a finding of no probable cause. In October 1996, Graham finally acceded to Rosemount's requirement that she be evaluated by Dr. Hung. After performing an examination, Dr. Hung concluded that Graham could not work in a setting requiring interaction with other employees.

During her leave of absence, Graham continued to receive treatment from Dr. Burzynski, who submitted claims to HealthPartners Administrators using therapy codes for traditional infusion treatment. HealthPartners processed these claims for payment and the ChoicePlus plan paid more than $120,000 to Dr. Burzynski. However, in February 1996, a Nightline report on Dr. Burzynski's controversial treatment approach drew the attention of HealthPartners. After investigating the claims submitted by Dr. Burzynski with regard to his treatment of Graham, HealthPartners denied coverage. Graham appealed this decision, but HealthPartners denied the appeal on the ground that the plan expressly excluded investigative/experimental therapies like the kind provided by Dr. Burzynski. This ruling did not affect the availability to Graham of conventional cancer treatments.

On June 27, 1997, Graham filed this action in federal court. In her amended complaint, Graham brings age and disability discrimination claims against defendants under the Americans with Disabilities Act of 1990 ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, the Employee Retirement Income Security Act ("ERISA") state common law, and the Minnesota Human Rights Act ("MHRA") Discovery completed, defendants now bring motions for summary judgment on all of Graham's claims.

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judg-

ment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *See id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *See id.* at 322–23, 106 S.Ct. 2548.

**B. Age Discrimination Claims**

Graham first claims that Rosemount discriminated against her because of her age, in violation of the ADEA and MHRA. *See Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1338–39 (8th Cir.1996) (finding that Minnesota courts apply federal precedent for MHRA age discrimination claims). Where the plaintiff offers circumstantial evidence to prove discrimination, the sequence and allocation of proof are governed by the Supreme Court decision in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–06, 93 S.Ct. 1817, 36 L.Ed.2d

668 (1973). *See also Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) As explained by the Eighth Circuit:

At the first stage, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The prima facie case, in the absence of an explanation from the employer, creates a presumption that the employer unlawfully discriminated against the employee. If the plaintiff establishes a prima facie case, the burden of production shifts at the second stage to the defendant, who must articulate some legitimate, nondiscriminatory reason for the adverse employment action. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted and "drops from the case." The burden then shifts back at the third and final stage to the plaintiff, who is given the opportunity to show that the employer's proffered reason was merely a pretext for discrimination. The plaintiff retains at all times the ultimate burden of persuading the trier of fact that the adverse employment action was motivated by intentional discrimination.

*Rothmeier*, 85 F.3d at 1332. If the analysis reaches this third stage, "the rule in [the Eighth] Circuit is that an age-discrimination plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that age was a determinative factor in the adverse employment decision." *Id.* at 1336–37. Here, Rosemount concedes, for purposes of summary judgment, that Graham has made out her prima facie case of age discrimination. In turn, Rosemount has articulated a legitimate, nondiscriminatory reason for its adverse employment action: Graham's alleged tirade during her June 1, 1995 meetings with her supervisors Waldhauer

and Walinske. Thus, the court's analysis must proceed to the third stage of the framework.

■ After carefully reviewing the record evidence in this case, the court concludes that Graham has not produced "enough evidence to allow a reasonable fact finder to infer that intentional discrimination, rather than the proffered explanation, was the real reason" that Rosemount placed Graham on leave. *Moschetti v. Chicago, Cent. & Pac. R.R. Co.,* 119 F.3d 707, 710 (8th Cir.1997). First, the court does not believe that Graham has created a genuine issue of fact as to pretext. To be sure, there is significant disagreement between the parties about what exactly went on during those closed-door meetings on June 1, 1995. However, even in Graham's version of events, she admits to raising her voice; accusing Rosemount, apparently without basis, of a plan to fire her; and twice suggesting that Fisher may have carried on an inappropriate relationship with an outside printing vendor. Given this admitted behavior by Graham and the undisputed background fact that she had been involved in a disruptive incident in May, Rosemount's decision to place Graham on leave makes a great deal of sense. If Rosemount's adverse job action had been unprovoked, or if Rosemount had reacted to Graham's admitted provocation disproportionately by, for example, immediately firing her, then the court might be inclined to conclude that Graham had met her burden regarding pretext. However, in this case, even when viewing the evidence in the light most favorable to the plaintiff, the events surrounding Graham's suspension are strongly consistent with Rosemount's proffered explanation.[1]

Second, even if the court were to find that a genuine fact question existed as to pretext, Graham has not produced evidence sufficient to support a reasonable inference that her age was the motivating force behind Rosemount's actions. Graham points to alleged age-based comments by co-worker Brechon as additional evidence of age discrimination. However, Graham has offered no evidence that these comments occurred while Brechon was acting as her supervisor in May 1995 or that Brechon had any input in Rosemount's decision on June 1, 1995 to place Graham on leave. Further, plaintiff testified in her deposition that she never complained of any age-based remarks to a supervisor. The law of the Eighth Circuit is clear on this point: stray comments that occur outside the presence of decisionmakers do not raise an inference of discrimination. *See Ryther v. KARE 11,* 108 F.3d 832, 843 (8th Cir.1997) (en banc); *Frieze,* 950 F.2d at 541–42.

In essence, therefore, Graham would have some evidence of pretext, combined with the elements of her prima facie case, perform the " 'double duty ... of permitting an inference that age discrimination was a motivating factor in a plaintiff's termination.' " *Rothmeier,* 85 F.3d at 1336 (quoting *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir.1994)). As the Eighth Circuit explained in *Rothmeier:*

> [I]n some cases the overall strength of the prima facie case in conjunction with evidence of pretext will be sufficient to permit a finding of intentional discrimination, while in other cases the prima facie case in tandem with evidence of pretext will not be sufficient to permit a finding of intentional discrimination.... Only where the evidence of the plain-

---

1. Graham also argues that her good performance record puts the lie to Rosemount's alleged reason for having fired her. However, as the Eighth Circuit has observed, "An employer rating an employee as competent discredits the employer's stated reason for discharging the employee ... only when the employer's stated reason is the employee's general incompetence." *Frieze v. Boatmen's*

*Bank of Belton,* 950 F.2d 538, 541 (8th Cir. 1991). Indeed, rather than undercutting Rosemount's stated reason, Graham's job evaluations support it. As far back as 1989, the evaluations note that Graham sometime had difficulty working with others and was prone to getting into disagreements with co-workers.

tiff's prima facie case and the evidence of pretext are sufficient considered together, to allow a reasonable factfinder to conclude that the defendant has intentionally discriminated against the plaintiff is "no additional proof of discrimination required." Whether or not a case requires evidence beyond a showing of pretext to support a finding of intentional discrimination is necessarily a fact-intensive determination and must be decided on a case-by-case basis.

*Id.* at 1334–35. The *Rothmeier* court went on to state that " '[i]n some cases, evidence that an employer's proffered nondiscriminatory explanation is *wholly without merit or obviously contrived* might serve double duty.' " *Id.* at 1336 (quoting *Boatmen's Bancshares*, 26 F.3d at 801) (emphasis added). It emphasized that "[o]nly within the ambit of these double-duty cases is no additional proof of discrimination required." *Id.* As recently observed in this district court by Judge John R. Tunheim, however, the strict language of *Rothmeier* has been somewhat modified in later Eighth Circuit decisions. *See generally Raddatz v. Standard Register Co.*, 31 F.Supp.2d 1155, 1159–60 (D.Minn.1999). In the most noteworthy of these, *Ryther*, the Eighth Circuit, sitting en banc, discussed the plaintiff's evidentiary burden at the third stage of the *McDonnell Douglas* framework:

> The elements of the prima facie case remain, . . . and if they are accompanied by evidence of pretext and disbelief of the defendant's proffered explanation, they may permit the jury to find for the plaintiff. This is not to say that, for the plaintiff to succeed, simply proving pretext is necessarily enough. We emphasize that evidence of pretext will not by itself be enough to make a submissible case if it is, standing alone, inconsistent with a reasonable inference of age discrimination.

108 F.3d at 837. In short, under Eighth Circuit precedent, it is not clear whether the double-duty scenario addressed in *Rothmeier* and *Ryther* should be considered the exception or the norm. *Compare*

*Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1102 (8th Cir.1996) ("presumably rare scenario"), *with Raddatz*, 31 F.Supp.2d at 1160 ("a showing of pretext will usually be sufficient").

Here, however, regardless of which approach is taken, Graham cannot show discriminatory animus on the basis of her pretext evidence. As stated, there is little evidence that Rosemount's proffered explanation for suspending Graham is spurious. Although a substantial disagreement exists between the parties over the dynamics of the June 1, 1995 meetings, the uncontested evidence shows that (1) these meetings occurred; (2) Graham raised her voice and made several provocative comments during the meetings; (3) Graham had been involved in a contentious workplace encounter in May, which precipitated these meetings; and (4) Rosemount responded to the June 1, 1995 encounter in a measured way, placing Graham on leave and keeping her health benefits intact, rather than quickly terminating her employment and benefits. This is not a case where the employer's proffered reason is "obviously contrived," as phrased in *Rothmeier*. Nor is this a case where the pretext evidence is "[ ]consistent with a reasonable inference of age discrimination," as phrased in *Ryther*. Consequently, the court must grant Rosemount summary judgment on Graham's age discrimination claims.

## C. Disability Claims

Graham also alleges that Rosemount discriminated against her on the basis of her disability status, in violation of the ADA and the MHRA. *See Roberts ex rel. Rodenberg–Roberts v. Kindercare Learning Centers, Inc.*, 86 F.3d 844, 846 n. 2 (8th Cir.1996) (concluding that ADA and MHRA disability claims are analyzed under the same framework).

There is a threshold dispute between the parties as to what disability Graham may properly assert as the basis of her claims. In her first complaint, in

her amended complaint, and during discovery, Graham repeatedly stated that breast cancer was the sole foundation of her disability claim. However, in her memorandum in response to defendants' motion for summary judgment, Graham alleges, for the first time, that Rosemount's perception of her mental illness was an independent basis for her disability claims. For obvious reasons, the court will not permit Graham to suddenly shift her disability definition after the close of discovery and after she has had the opportunity to evaluate the strength of Rosemount's arguments in opposition to her breast cancer disability claims.

■ To prevail on her breast cancer disability claims, Graham must first demonstrate that she suffers from a disability within the meaning of the statute, that she is qualified to perform the essential functions of the job, with or without reasonable accommodation, and that she suffered an adverse employment action because of her disability. *See Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071–72 (8th Cir.1998). A plaintiff's prior statement regarding the severity of her disability is evidence of whether she is qualified to perform the essential functions of the job. "Typically, 'the prior representations [of total disability] carry sufficient weight to grant summary judgment against the plaintiff'" absent "'strong countervailing evidence that the employee is in fact qualified.'" *Dush v. Appleton Elec. Co.*, 124 F.3d 957, 963 (8th Cir.1997) (citation omitted); *see also Downs v. Hawkeye Health Services, Inc.*, 148 F.3d 948, 951 (8th Cir .1998) ("This burden is, by the claimant's own making, particularly cumbersome.").

■ Here, Graham has repeatedly stated that she is unable to perform her job because of the severity of her disability. First, Dr. Burzynski and another physician submitted, at her request, medical certification statements for the purpose of obtaining a medical leave of absence from Rosemount. These certifications stated that Graham was unable during that period to perform the functions of her position.

The first certification, submitted June 30, 1995 identified the period of incapacity as running from April 18, 1995 to December 30, 1995. A later certification, submitted on July 15, 1995, stated that Graham could perform her job duties, but only beginning August 1, 1995. However, a subsequent certification stated that she would be unable to perform her job starting December 15, 1995. Second, on January 31, 1996, Graham submitted an application for benefits under Rosemount's Long Term Disability ("LTD") Benefit Plan, representing that she was "unable to work at any occupation [for which she was] or could reasonably be qualified to do." LTD Plan for Active Employees of Rosemount, Inc. at 2. On the LTD application, she stated that the initial date of her disability was August 1, 1995. An attached statement by her physician confirmed her total disability beginning on that date. Third, in January 1997, Graham completed her application for Social Security benefits, in which she listed a battery of disabling conditions, including breast cancer, chemical sensitivity, carpal tunnel syndrome, poor kidney function, liver problems, and indigestion. At the request of the Social Security Administration ("SSA"), Graham underwent a psychological evaluation. On the basis of this evaluation, the SSA concluded that Graham had been mentally disabled since June 1, 1995, the date she was placed on leave by Rosemount.

The only evidence Graham offers to counteract her own representations is the observation that, up until June 1, 1995, she had been performing her job effectively. However, as the Eighth Circuit explained in *Dush*, in cases where a discrete job action "is the focus of our inquiry, the key concern is whether the employee was a qualified individual at the time of" the adverse job action. 124 F.3d at 963–64. Here, both Graham's representations and the medical reports accompanying them firmly support the conclusion that Graham was totally disabled the day she was placed on leave. Because Graham has not offered strong evidence that she was capa-

ble of performing her job with or without reasonable accommodation on or after June 1, 1995, summary judgment must be granted on her disability claims.

Even if Graham has made out a prima facie case, she cannot show disability discrimination under the *McDonnell Douglas* framework discussed above. Taken as a whole, the record evidence in the case is inconsistent with any inference of disability discrimination. Not only did Rosemount know about Graham's breast cancer for months prior to the incident, it made several efforts to accommodate her illness. Further, Graham's leave status was in no way conditioned on the status of her cancer treatment. Indeed, Rosemount allowed Graham's medical coverage to continue during her leave period. On these facts, no jury could reasonably infer that Rosemount discriminated against Graham on the basis of her disability status.[2]

### D. Title VII and MHRA Retaliation Claims

In Counts V & VI of her amended complaint, Graham claims that defendants retaliated against Graham in violation of Title VII and MHRA. Defendants argue that these claims should be dismissed on failure to exhaust and preemption grounds. In her motion papers, Graham has declined to respond to defendants' arguments. The court will therefore consider these claims waived.

### E. ERISA Claims

Graham also brings several claims under ERISA. First, Graham contends that defendants improperly denied her claim for benefits, in violation of 29 U.S.C. § 1132(a)(1)(B). Because the ChoicePlus plan gives its administrator discretion to "determine eligibility for benefits and construe the terms of the Plan," ChoicePlus Employee Benefit Plan at 2, the court reviews the administrator's denial of Graham's benefit claim under the abuse of discretion standard. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) Graham does not appear to dispute that Dr. Burzynski's treatment met the plan's explicit exclusion for experimental treatment, or that, under ordinary circumstances, the administrator's decision to deny the benefits on the basis of the information before him would have been reasonable. Instead, Graham contends that because the plan initially reimbursed these claims, her right be paid for Dr. Burzynski's therapy vested, and any subsequent denial of this vested right by the plan administrator was an abuse of discretion. As defendants point out, however, Graham's estoppel argument is not recognized within the Eighth Circuit. *See Barker v. Ceridian*, 122 F.3d 628, 632–33 (8th Cir.1997) (absent contractual agreement to the contrary, employers are free to amend or terminate welfare plans unilaterally); *Slice v. Sons of Norway*, 866 F.Supp. 397, 405 (D.Minn.1993), *aff'd*, 34 F.3d 630 (8th Cir.1994) (holding that, in the ERISA context, "[e]stoppel can only be employed 'when the terms of the plan are ambiguous and the communications constituted an interpretation of that ambiguity'" (citation omitted)). In light of this precedent, the court concludes that the administrator's decision to deny Graham's claims was not an abuse of discretion.

**2.** In her response papers, Graham also makes the eleventh-hour argument that Rosemount failed to accommodate her disability by allowing her to work at home. The premise of this argument is not entirely clear. If Graham is suggesting that Rosemount failed to accommodate her breast cancer, this argument fails in light of the ample record evidence of Rosemount's ready accommodation of this condition before she was placed on leave. If Graham is suggesting that Rosemount failed to accommodate any perceived or actual mental illness, this argument fails because the court has already concluded that mental illness cannot form the foundation of her disability claims. Further, Graham has offered no evidence whatsoever that the home-work accommodation she claims to have requested would have been reasonable, or even feasible, in the first place. *See Benson v. Northwest Airlines*, 62 F.3d 1108, 1112 (8th Cir.1995) (stating that initial burden of showing reasonableness of accommodation is on the plaintiff).

Second, Graham contends that defendants breached their fiduciary duty by denying her claim for benefits. However, in *Wald v. Southwestern Bell Customcare Medical Plan,* the Eighth Circuit held that equitable relief is not appropriate when an ERISA plaintiff "seeks no different relief" than what she might obtain via a § 1132(a)(1)(B) claim for benefits. 83 F.3d 1002, 1006 (8th Cir.1996). Here, plaintiff seeks an award of past medical expenses and a guarantee that the ChoicePlus plan will cover future medical expenses, which is exactly the relief she would receive under § 1132(a)(1)(B). Thus, plaintiff's breach of fiduciary duty claim is not appropriate and must be dismissed.

Third, Graham alleges that defendants retaliated against her when she attempted to exercise her ERISA rights, in violation of 29 U.S.C. § 1140. To prevail on this claim, Graham must show a causal relationship between an adverse employment action and some statutorily protected activity or a likelihood of future benefits. *See Rath v. Selection Research, Inc.,* 978 F.2d 1087, 1089 (8th Cir.1992). ERISA retaliation claims are analyzed under the three-part burden-shifting framework described above. *See Kinkead v. Southwestern Bell Telephone Co.,* 49 F.3d 454, 456 (8th Cir.1995). Defendants argue that Graham has not met her prima facie case because she has not clearly demonstrated what adverse employment action occurred. In her motion papers and at oral argument, Graham has alternately suggested that the adverse employment action was (1) Rosemount's decision to place her on leave, (2) Rosemount's continuing decision to keep her on leave, and (3) the plan's decision to deny payment for her experimental treatment.

Graham's inability to define the exact nature of defendants' retaliatory action reflects a continuing theme in this case: there is almost no evidence that defendants acted relative to Graham for anything other than legitimate, nondiscriminatory reasons. While it is true that Rosemount placed Graham on leave, Rosemount also extended coverage to her under the ChoicePlus plan during the leave period. And while it is true that the plan stopped paying for Graham's experimental treatment, the plan also continued to cover any conventional cancer treatments Graham might undergo.[3] In short, whether the gaps in Graham's ERISA retaliation claim are viewed as a failure of the prima facie case or a failure to show pretext, the court has no choice but to grant summary judgment for defendants on the issue.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that defendants' motions for summary judgment (Doc. Nos. 27 & 38) are granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

---

3. At oral argument, Graham's attorney argued that the denial of benefits in June 1996 followed suspiciously close behind Graham's filing of her discrimination charges in March 1996. However, the record evidence shows that HealthPartners, not Rosemount or the ChoicePlus plan, initiated the decision to deny payment for the Burzynski treatments after viewing the February Nightline report and then conducting an investigation. And there is simply no evidence that HealthPartners had knowledge of Graham's EEOC complaint before it began this process.